The People of the State of Illinois, Appellee, v. Betty Behymer, Appellant.

Gen. No. 11,857.

Third District.

May 19, 1964.

Clarence J. Crooks, Jr., of Peoria, for appellant.

William G. Clark, Attorney General, of Springfield (James V. Cunningham, State's Attorney, of Peoria, Fred Leach, Assistant Attorney General, and Jay H. Janssen, Assistant State's Attorney, of counsel), for appellee.

ROETH, JUSTICE.

Defendant was convicted in a trial before a jury, of keeping a place of prostitution in violation of sec 11–17 of chap 38, Ill Rev Stats 1961. She was sentenced to serve a term of 1 year at Illinois State Reformatory for Women. This appeal followed.

There is no dispute in the facts. In the evening of July 27, 1962, Illinois State Trooper Donald Murphy left a Peoria Police car parked on Jefferson Street about three-fourths a block from 101 Warner Street, Peoria, Illinois. State Trooper Robert Webb and Frank Fosco of the Peoria Police Department remained in the automobile parked on Jefferson Street and Murphy, who was assigned to the criminal investigation section of the Illinois State Highway Police, walked south on Jefferson Street to State Street and turned on State Street into an alley that leads to the address at 101 Warner Street, Peoria, Illinois, walked up to the outdoor porch, and knocked on the screen door of these premises.

One Dorothy Madison opened the inner door and while Trooper Murphy talked with Dorothy Madison, the defendant, Betty Behymer, walked up on the porch and stood beside Trooper Murphy. The defendant, Betty Behymer, asked Trooper Murphy his address and his name. She also asked for identification and Trooper Murphy showed the defendant his chauffeur's license. Betty Behymer then entered the premises at 101 Warner Street, Peoria, Illinois, when Dorothy Madison took the hook off of the outer screen door admitting the defendant. Officer Murphy remained on the front porch of the premises. The defendant then asked Trooper Murphy where he worked and further asked him where the offices of his alleged employment were located. The defendant further questioned Officer Murphy concerning the location of par-

219

ticular businesses in the City of Chenoa, Illinois, where Officer Murphy told her he resided. Betty Behymer asked him who had sent him to these premises and then she turned to Dorothy Madison, who was at the door, and told her, "I am not scared of him, you can let him in." Dorothy Madison next took the hook off the screen door and opened it allowing Trooper Murphy to enter the premises.

Upon entry of the premises, Trooper Murphy asked the defendant, what were the prices. Her reply was, "We don't discuss prices out here, honey, you take a girl in a room and you discuss prices with her." Trooper Murphy then followed Kay Crosley, who was dressed in a transparent negligee, into a bedroom while the defendant remained in the main sitting room of the premises. Kay Crosley closed the bedroom door behind Trooper Murphy and requested to inspect the officer. She said that she was afraid that he was a policeman and that she was going to get pinched again. Trooper Murphy requested the price and Kay Crosley replied, "How much can you afford?" A marked ten dollar bill was shown to Kay Crosley and she replied, "Can you spend it all?" When an affirmative reply was given she stated, "I will give you a real party for that." Kay Crosley told Trooper Murphy that she would not take the money until he was first inspected, for if he were found not to be clean, she could not take care of him and there would be no hard feelings.

Trooper Murphy then placed the occupants of the premises under arrest, but found that the defendant Betty Behymer had left the premises while he was in the bedroom with Kay Crosley. After Trooper Murphy placed the occupants of the house under arrest, Trooper Webb and Officer Fosco proceeded to the premises to assist in placing the girls into a police wagon.

Approximately one hour after the raid and arrest of the occupants at 101 Warner Avenue the defendant, Betty Behymer, telephoned the Peoria Police Station and talked with Detective William Frede. She said to Detective Frede, "This is Betty, I want to know when I can get my girls out of jail." The Defendant was told that she was wanted as a keeper of a house of prostitution and could not get her girls out of jail until she and Dorothy Madison came in to be booked pursuant to the raid on the house of prostitution at 101 Warner Street. The defendant said that she would come into the police station and she, in fact, came to the Peoria Police Station on the morning of July 28, 1962.

On March 25, 1963, the defendant had a conversation with Officer Frank Fosco at the lunch counter of the Court House, Peoria, Illinois. The defendant told Officer Fosco that her trouble stemmed from Jimmy Lewis and Pam Miller due to the fact that she was buying the house at 101 Warner Street, Peoria, Illinois, from Jimmy Lewis.

■ Several errors are assigned to reverse the judgment. We consider them in the order set forth in counsel's brief. The first revolves around a situation claimed to be shown by the record, namely, that defendant, previous to the conviction in the case at bar, had been prosecuted under a city ordinance for this same offense and acquitted. It is claimed that the case falls within the prohibition of sec 3–3(b) of chap 38, Ill Rev Stats 1961, and in addition that the double jeopardy rules generally apply. At the outset of a consideration of this question we should observe that it is extremely doubtful whether the record adequately reflects the factual situation upon which this contention is premised. However, we are inclined to consider the legal question as though the record did so show.

221

The background of insertion of sec 3–3(b) in the Criminal Code of 1961 is fully discussed in the "Committee Comments on the Proposed Illinois Criminal Code" contained in pamphlet entitled Proposed Illinois Revised Criminal Code of 1961, pages 120 to 127. Primarily this section was intended to affect situations such as arose in People v. Ciucci, 8 Ill2d 619, 137 NE2d 40. See also Ciucci v. Illinois, 356 US 571, 78 S Ct 839, 2 L Ed2d 983. Nowhere in the Committee Comments is it even remotely suggested that this section covers the situation at bar. Furthermore, it is important to note that the section in question uses the word "Offenses" in requiring that several offenses based upon the same act must be prosecuted in a single prosecution. This word, by definition (Ill Rev Stats 1961, c 38, § 2–12) means violations of the penal statutes of the State. Basically the section in question was meant to give a more enlightened view of the double jeopardy provisions of the Constitution. However, in our opinion this concept has no application where the same act constitutes a violation of both a city ordinance and a state statute. As early as Wragg et al. v. Penn Township, 94 Ill 11 (a case which has been often cited and never overruled), it was recognized that the same act might constitute a violation of a city ordinance and of a state statute and that prosecution could be sustained under both without violating the double jeopardy concept. The precise question urged by counsel for defendant was involved in Nicholson v. The People, 29 Ill App 57, wherein it was held that a defendant is not in double jeopardy when tried under a state statute after a former acquittal for violation of a city ordinance where the act involved is the same under both. The Wragg case, supra, is cited as supporting this doctrine. See also City of Chicago v. Clark, 359 Ill 374, 194 NE 537. We

222

conclude that there is no merit in this contention of counsel for defendant.

█ It is next contended that error was committed by the trial court in refusing to grant the motion of counsel for defendant for leave to withdraw from the case. The events giving rise to this contention are as follows: The information was filed January 24, 1963. On the following day defendant appeared in open court in person and was furnished with a copy of the information, list of witnesses and list of jurors. On this day a rule was entered on defendant to plead to, or file motions directed to, the information on or before February 11, 1963. On February 11, 1963, defendant appeared in open court and waived presence of her counsel and entered a plea of not guilty. On February 12, 1963, the instant case was placed on a pretrial calendar for March 5, 1963. Counsel for defendant was furnished with a copy of the pretrial calendar. Neither defendant nor her counsel appeared on March 5, 1963. On March 20, 1963, the Assistant State's Attorney and counsel for defendant appeared in open court on which day the cause was set for trial on March 25, 1963, at 9:30 a. m. On March 25, 1963, at 9:30 a. m., the People of the State of Illinois appeared by the Assistant State's Attorney, and defendant and her attorney appeared in open court. Counsel for the defendant made an oral motion for a continuance to 1:30 p. m. the same day, and this motion for continuance was granted. Upon reconvening of the Court at 1:30 p. m., March 25, 1963, the attorney for the defendant asked for permission for leave to withdraw as counsel for defendant. The defendant said in open court that she was satisfied with her counsel the morning of trial but had a change of heart concerning defense counsel's representation of her when he recommended that she enter a plea of guilty in this cause.

The court then fully explained to defendant that she was not obliged to change her plea of not guilty and enter a plea of guilty; that her attorney would be obliged to defend her if she continued with her plea of not guilty and he would, in fact, defend her and could not withdraw because the defendant would not plead guilty. The motion for leave to withdraw was then denied and the cause proceeded to trial. Counsel for defendant took an active part in the trial of the case. He vigorously cross-examined the witnesses of the People. He entered numerous objections to testimony and on occasions argued his objections outside the presence of the jury. He filed a post-trial motion and when it was denied took the necessary steps to perfect this appeal. The record is barren of anything that would indicate lack of cooperation between defendant and trial counsel. And although additional counsel entered his appearance on this appeal, there is nothing in the record to show that original trial counsel is not still one of the attorneys of record. The record before us thus indicates that defendant was adequately represented by the counsel whom she originally employed. In the recent case of People v. Catalano, 29 Ill2d 197, 193 NE2d 797, the court said:

> "The motion by an attorney for leave to withdraw for any reason is also addressed to the sound discretion of the court. For that reason, a burden rests with the moving party to prove to the court's satisfaction the legitimacy of the request, or the court may properly deny the motion."

Under the circumstances reflected by the record in this case, we are of the opinion that the trial court did not abuse its discretion in denying defense counsel's motion for leave to withdraw.

It is next contended that it was error to admit in evidence the conversation between Kay Crosley

and Trooper Murphy which occurred in the bedroom outside the presence of the defendant. This contention is adequately disposed by the case of People v. Tucker, 21 Ill App2d 46, 156 NE2d 873, wherein similar conversations were held properly admitted in evidence on either one of two theories.

█ Finally it is contended that it was error to permit a police officer to testify to various aliases used by defendant in the past. At the outset it should be noted that defendant was charged in the information under various aliases and the police officer testified that he knew the defendant and that she used the various names specified in the information. It is not error to charge a defendant in his proper name as well as under an alias in an indictment. In the case at bar it is not disputed that defendant had been known under names other than her own. The purpose of the officer's testimony therefore is for the purpose of identification and in substantiation of the charge in the indictment. The testimony was properly admitted. People v. Jedynak, 377 Ill 621, 37 NE2d 335.

We find no error in this record and accordingly the judgment of the trial court will be affirmed.

Affirmed.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.