## WALLER v. FLORIDA

No. 24. Argued November 13, 1969—
Decided April 6, 1970

*Leslie Harold Levinson* argued the cause for petitioner. With him on the brief were *Melvin L. Wulf* and *Gardner W. Beckett, Jr.*

*George R. Georgieff,* Assistant Attorney General of Florida, argued the cause for respondent. With him on the brief were *Earl Faircloth,* Attorney General, and *William D. Roth,* Special Assistant Attorney General.

Mr. Chief Justice Burger delivered the opinion of the Court.

We granted the writ in this case to review a narrow question which can best be treated on the basis of the facts as stated by the District Court of Appeal of Florida, Second District, and the holding of that court. Petitioner was one of a number of persons who removed a canvas mural which was affixed to a wall inside the City Hall of St. Petersburg, Florida. After the mural was removed, the petitioner and others carried it through the streets of St. Petersburg until they were confronted by police officers. After a scuffle, the officers recovered the mural, but in a damaged condition.

The petitioner was charged by the City of St. Petersburg with the violation of two ordinances: first, destruction of city property; and second, disorderly breach of the peace. He was found guilty in the municipal court on both counts, and a sentence of 180 days in the county jail was imposed.

Thereafter an information was filed against the petitioner by the State of Florida charging him with grand larceny. It is conceded that this information was based on the same acts of the petitioner as were involved in the violation of the two city ordinances.

Before his trial in the Circuit Court on the felony charge, petitioner moved in the Supreme Court of Florida for a writ of prohibition to prevent the second trial, asserting the claim of double jeopardy as a bar. Relief was denied without opinion. *Waller* v. *Circuit Court for the Sixth Judicial Circuit in and for Pinellas County,* 201 So. 2d 554 (1967). Thereafter petitioner was tried in the Circuit Court of Florida by a jury and was found guilty of the felony of grand larceny. After verdict in the state court, he was sentenced to six months to five years less 170 days of the 180-day sentence pre-

viously imposed by the municipal court of St. Petersburg, Florida.

On appeal, the District Court of Appeal of Florida considered and rejected petitioner's claim that he had twice been put in jeopardy because prior to his conviction of grand larceny, he had been convicted by the municipal court of an included offense of the crime of grand larceny. *Waller* v. *State,* 213 So. 2d 623 (1968). The opinion of the District Court of Appeal first explicitly acknowledged that the charge on which the state court action rested "was based on the same acts of the appellant as were involved in the violation of the two city ordinances." Then, in rejecting Waller's claim of double jeopardy, the court said:

> "Assuming but not holding that the violations of the municipal ordinances were included offenses of the crime of grand larceny, the appellant nevertheless has not twice been put in jeopardy, because *even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.* This has been the law of this state since 1894, as is established in the case of Theisen v. McDavid, 34 Fla. 440, 16 So. 321 . . . . The Florida Supreme Court has followed the Theisen case, supra, throughout the years and as recently as July 17, 1968, in Hilliard v. City of Gainesville, Fla., 213 So. 2d 689, reaffirmed the Theisen case and stated as follows:
>
> " 'This double jeopardy argument has long been settled contrary to the claims of the petitioner. We see no reason to recede from our established precedent on the subject. Long ago it was decided that an act committed within municipal limits may be punished by city ordinance even though the same

act is also proscribed as a crime by a state statute. An offender may be tried for the municipal offense in the city court and for the crime in the proper state court. Conviction or acquittal in either does not bar prosecution in the other.' " (Emphasis added.)

A petition for a writ of certiorari to the Supreme Court of Florida was denied, *Waller* v. *State,* 221 So. 2d 749 (1968). It is reasonable to assume that the Florida trial court and the District Court of Appeal considered themselves bound by the doctrine of *Theisen* v. *McDavid,* 34 Fla. 440, 16 So. 321, which at that time was being reasserted in *Hilliard* v. *City of Gainesville,* 213 So. 2d 689, and had been reaffirmed by the Florida Supreme Court's denial of a writ of prohibition sought by Waller on the claim of double jeopardy.

We act on the statement of the District Court of Appeal that the second trial on the felony charge by information "was based on the same acts of the appellant as were involved in the violation of the two city ordinances" and on the assumption that the ordinance violations were included offenses of the felony charge.[1] Whether in fact and law petitioner committed separate offenses which could support separate charges was not decided by the Florida courts, nor do we reach that question. What is before us is the asserted power of the two courts within one State to place petitioner on trial for the same alleged crime.

In *Benton* v. *Maryland,* 395 U. S. 784 (1969), this Court declared the double jeopardy provisions of the Fifth Amendment applicable to the States, overruling *Palko* v. *Connecticut,* 302 U. S. 319 (1937). Here, as

---

[1] We accept the assumption of the District Court of Appeal although the record is not adequate to verify its accuracy. For example, no part of the record of the municipal court conviction has been incorporated into the record in the present case.

in *North Carolina* v. *Pearce*, 395 U. S. 711 (1969), *Benton* should be applied to test petitioner's conviction, although we need not and do not decide whether each of the several aspects of the constitutional guarantee against double jeopardy requires such application in similar procedural circumstances.[2]

Florida does not stand alone in treating municipalities and the State as separate sovereign entities, each capable of imposing punishment for the same alleged crime.[3]

[2] *Benton* v. *Maryland*, 395 U. S. 784 (1969), controls any case which arises in its ambit. See *Ashe* v. *Swenson, post,* p. 436 n. 1. Nonetheless, when this Court granted certiorari in *Price* v. *Georgia,* No. 269, 1969 Term, it requested that counsel "brief and argue [the] question of retroactivity of *Benton* v. *Maryland,* [395 U. S. 784], and whether that decision is applicable to this case." 395 U. S. 975 (1969). By our decisions in the instant case and in *Ashe* v. *Swenson, supra,* we do not resolve, with respect to the circumstances presented in *Price* v. *Georgia, supra,* either of the two questions posed by the Court in that case.

[3] Decisions of the States that currently appear to treat municipalities and the State as separate sovereigns for double jeopardy purposes are as follows:

*Pike* v. *City of Birmingham,* 36 Ala. App. 53, 53 So. 2d 394, cert. denied, 255 Ala. 664, 53 So. 2d 396 (1951). See also Ala. Code, Tit. 37, § 594 (1958). *United States* v. *Farwell,* 11 Alaska 507, 76 F. Supp. 35 (D. C. Alaska 1948); *McInerney* v. *City of Denver,* 17 Colo. 302, 29 P. 516 (1892); *State* v. *Musser,* 67 Idaho 214, 176 P. 2d 199 (1946); *People* v. *Behymer,* 48 Ill. App. 2d 218, 198 N. E. 2d 729 (1964); *State* v. *Garcia,* 198 Iowa 744, 200 N. W. 201 (1924); *Earwood* v. *State,* 198 Kan. 659, 426 P. 2d 151 (1967); *State* v. *Clifford,* 45 La. Ann. 980, 13 So. 281 (1893). See also La. Crim. Pro. Code Ann., Art. 597 (1967); *State* v. *End,* 232 Minn. 266, 45 N. W. 2d 378 (1950); *May* v. *Town of Carthage,* 191 Miss. 97, 2 So. 2d 801 (1941); *State* v. *Garner,* 360 Mo. 50, 226 S. W. 2d 604 (1950); *State* v. *Amick,* 173 Neb. 770, 114 N. W. 2d 893 (1962); *Ex parte Sloan,* 47 Nev. 109, 217 P. 233 (1923); *State* v. *Simpson,* 78 N. D. 360, 49 N. W. 2d 777 (1951); *Koch* v. *State,* 53 Ohio St. 433, 41 N. E. 689 (1895); *McCann* v. *State,* 82 Okla. Cr. 374, 170 P. 2d 562 (1946); *Miller* v. *Hansen,* 126 Ore. 297, 269 P. 864 (1928); *Webster* v. *Knewel,* 47 S. D. 142, 196

Here, respondent State of Florida seeks to justify this separate sovereignty theory by asserting that the relationship between a municipality and the State is analogous to the relationship between a State and the Federal Government. Florida's chief reliance is placed upon this Court's holdings in *Bartkus* v. *Illinois,* 359 U. S. 121 (1959), and *Abbate* v. *United States,* 359 U. S. 187 (1959), which permitted successive prosecutions by the Federal and State Governments as separate sovereigns. Any such reading of *Abbate* is foreclosed. In another context, but relevant here, this Court noted—

> "Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." *Reynolds* v. *Sims,* 377 U. S. 533, 575 (1964).

Florida has recognized this unity in its Constitution. Article VIII, § 2, of the Florida Constitution (1968 revision) contains a grant of power to the Florida Legislature respecting municipalities: [4]

> "(a) *Establishment.* Municipalities may be established or abolished and their charters amended pursuant to general or special law. . . .

N. W. 549 (1924); *State* v. *Tucker,* 137 Wash. 162, 242 P. 363, 246 P. 758 (1926); *City of Milwaukee* v. *Johnson,* 192 Wis. 585, 213 N. W. 335 (1927); *State* v. *Jackson,* 75 Wyo. 13, 291 P. 2d 798 (1955). Gross, Successive Prosecutions by City and State—The Question of Double Jeopardy, 43 Ore. L. Rev. 281 (1964), contains a discussion of the origins and development of this "dual sovereignty" doctrine. See also Note, 1968 Duke L. J. 362.

[4] At the time of petitioner's trial, before the 1968 revision of the Florida Constitution, Art. VIII, § 8, of the Florida Constitution (1885) gave power to the State Legislature:

"to establish, and to abolish, municipalities[,] to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time."

"(b) *Powers.* Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services . . . ."

Moreover, Art. V, § 1, of the Florida Constitution (1885), which does not appear to have been changed in the 1968 Constitutional revision, declares:

"[T]he judicial power of the *State of Florida* is vested in a supreme court . . . and such other courts, *including municipal courts* . . . as the legislature may from time to time ordain and establish." (Emphasis added.)

These provisions of the Florida Constitution demonstrate that the judicial power to try petitioner on the first charges in municipal court springs from the same organic law that created the state court of general jurisdiction in which petitioner was tried and convicted for a felony. Accordingly, the apt analogy to the relationship between municipal and state governments is to be found in the relationship between the government of a Territory and the Government of the United States. The legal consequence of that relationship was settled in *Grafton* v. *United States,* 206 U. S. 333 (1907), where this Court held that a prosecution in a court of the United States is a bar to a subsequent prosecution in a territorial court, since both are arms of the same sovereign.[5] In *Grafton* a soldier in the United States Army had been acquitted by a general court-martial convened in the Philippine Islands of the alleged crime of feloniously killing two men. Subsequently, a criminal information in the name of the United States was filed in a Philippine court while those islands were a federal terri-

---

[5] See also *Puerto Rico* v. *Shell Co.* (*P. R.*), *Ltd.,* 302 U. S. 253 (1937), where the Court in dicta approved of *Grafton.*

tory, charging the soldier with the same *offense commit-ted* in violation of local law. When Philippine courts upheld a conviction against a double jeopardy challenge, this Court reversed, resting upon the single-sovereign rationale and distinguishing cases like *Fox* v. *Ohio,* 5 How. 410 (1847), which sanctioned successive prosecutions by State and Federal Governments for the same acts:

> "An offense against the United States can only be punished under its authority and in the tribunals created by its laws; whereas, an offense against a State can be punished only by its authority and in its tribunals. The same act . . . may constitute two offenses, one against the United States and the other against a State. But these things cannot be predicated of the relations between the United States and the Philippines. The Government of a State does not derive its powers from the United States, while the Government of the Philippines owes its existence wholly to the United States, and its judicial tribunals exert all their powers by authority of the United States. The jurisdiction and authority of the United States over that territory and its inhabitants, for all legitimate purposes of government, is paramount. So that the cases holding that the same acts committed in a State of the Union may constitute an offense against the United States and also a distinct offense against the State, do not apply here, where the two tribunals that tried the accused exert all their powers under and by authority of the same government—that of the United States." 206 U. S., at 354–355.

Thus *Grafton,* not *Fox* v. *Ohio, supra,* or its progeny, *Bartkus* v. *Illinois, supra,* or *Abbate* v. *United States, supra,* controls, and we hold that on the basis of the facts upon which the Florida District Court of Appeal relied

petitioner could not lawfully be tried both by the municipal government and by the State of Florida. In this context a "dual sovereignty" theory is an anachronism, and the second trial constituted double jeopardy violative of the Fifth and Fourteenth Amendments to the United States Constitution.

We decide only [6] that the Florida courts were in error to the extent of holding that—

"even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court."

The second trial of petitioner which resulted in a judgment of conviction in the state court for a felony having no valid basis, that judgment is vacated and the cause remanded to the District Court of Appeal of Florida, Second District, for further proceedings in accord with this opinion. In these circumstances we do not reach other contentions raised by petitioner.

*It is so ordered.*

MR. JUSTICE BLACK joins the opinion of the Court, but nonetheless adheres to the views expressed in his dissenting opinions in *Bartkus* v. *Illinois,* 359 U. S. 121, 150 (1959), and *Abbate* v. *United States,* 359 U. S. 187, 201 (1959).

MR. JUSTICE BRENNAN, concurring.

I join the holding of the Court that, because the municipal and state courts of a State are part of one

---

[6] If petitioner has committed offenses not embraced within the charges against him in the municipal court he may, or may not, be subject to further prosecution depending on statutes of limitation and other restrictions not covered by the double jeopardy restraints of the Constitutions of Florida and of the United States.

sovereign judicial system, successive prosecutions in the municipal and state courts are not prosecutions by separate sovereign entities. Moreover, for the reasons stated in my concurring opinion in *Ashe* v. *Swenson, post,* p. 448, I believe that, unless this case fell within one of the exceptions to the "same transaction" rule, see, *id.,* at 453 n. 7, 455 n. 11, the Double Jeopardy Clause barred a second trial since all the charges grew out of the same criminal episode.*

---

*I adhere to the Court's holding in *Ashe* v. *Swenson, post,* at 437 n. 1, that our decision in *Benton* v. *Maryland,* 395 U. S. 784 (1969), holding the Double Jeopardy Clause of the Fifth Amendment applicable to the States, is "fully 'retroactive.'" See also *North Carolina* v. *Pearce,* 395 U. S. 711 (1969).