TOWNSHIP OF CHESTER, PLAINTIFF-RESPONDENT, v.
MARIO PANICUCCI, DEFENDANT-APPELLANT.

Argued September 11, 1972—Supplemental memorandum
filed October 30, 1972—Decided January 22, 1973.

*Mr. William E. Ozzard* argued the cause for defendant-appellant (*Messrs. Ozzard, Rizzolo, Klein, Mauro & Savo,* attorneys; *Mr. Ozzard,* on the brief).

*Mr. James M. Kenihan* argued the cause for plaintiff-respondent (*Messrs. Fullerton, Kenihan & Porfido,* attorneys; *Mr. Kenihan and Mr. Lawrence P. Cohen,* on the brief).

*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, by *Mr. Stephen Skillman,* Assistant Attorney General, filed a memorandum at the request of the Court.

The opinion of the Court was delivered by

HALL, J. This case involves the question whether a state statute prohibiting possession of a loaded gun within a specified distance of an occupied dwelling or school playground "for the purpose of hunting, taking or killing any bird or animal" precludes a municipal ordinance operating in the same area. Defendant, supported by the Attorney General, contends that the state has preempted this field.

The statute is found in *N. J. S. A.* Title 23, Fish and Game, Wild Birds and Animals, section 23:4–16, the full pertinent portion of which at the date here involved read:

* * * no person shall, *for the purpose of hunting, taking or killing any bird or animal,* discharge any firearm upon or across any State, county or municipal road or highway, and no person, except the owner or lessee of the property and persons specifically authorized by him in writing, shall, *for the purpose of hunting, taking or killing*

*any bird or animal*, have in his possession a loaded gun while within 300 feet of any occupied dwelling in this State or while within 400 feet of a school playground * * *.[1]   (Emphasis supplied)

The power to enact municipal regulation of gun use is specifically delegated by *N. J. S. A.* 40:48–1(18), derived from the Home Rule Act of 1917 (*L.* 1917, *c.* 152, Art. XIV, § 1, p. 354), authorizing municipalities to adopt ordinances to "[r]egulate and prohibit the sale and use of guns, pistols, firearms, and fireworks of all descriptions." Plaintiff township's ordinance provision (Section 46 of its Vice and Immorality Ordinance) is identical in verbiage with the quoted portion of *N. J. S. A.* 23:4–16 except for the omission of the italicized phrases. Thus, while the ordinance is broader in scope than the statute, it is duplicative insofar as loaded gun possession for the purpose of hunting is concerned.

There is a difference in the penalty provisions of the two enactments. *N. J. S. A.* 23:4–16 prescribes a civil penalty of $50 for each offense, recoverable in a summary proceeding in the appropriate county district or municipal court, *N. J. S. A.* 23:10–2, for the use of the Division of Fish and Game, *N. J. S. A.* 23:10–19 (now the Division of Fish, Game and Shell Fisheries in the State Department of Environmental Protection, *L.* 1970, *c.* 33, § 7, *N. J. S. A.* 13:1D–4). Violation of the ordinance provision is punishable as a petty offense in the local municipal court, under a general penal section of the enactment, by a fine not exceeding $200 or 90 days imprisonment or both. This penalty is within the limits prescribed by *N. J. S. A.* 40:49–5, authorizing penalties for the violation of municipal ordinances. Fines for such violations go into the municipal treasury.

---

[1]The section has since been amended by *L.* 1971, *c.* 252, § 2, to encompass the casting of arrows as well as the discharge of firearms across roads or highways and to increase the distance within which possession of a loaded gun is prohibited to 450 feet from both occupied dwellings and school playgrounds.

The question posed comes to us in the abstract. Defendant was charged by complaint made by a local police officer in the township municipal court with discharging a firearm within 300 feet of a dwelling in violation of the ordinance. Proof of that occurrence would, of course, establish possession of a loaded gun, the act both the ordinance and the statute forbid. The case has never been tried and there has been no stipulation that the offense occurred. The most that has been conceded is that defendant was at the time within the confines of state-owned public hunting grounds in the township "for the purpose of hunting."[2]

Defendant moved in the municipal court to dismiss the complaint on the ground that application of the ordinance provision was invalid by reason of state preemption of the field of hunting, *i. e.*, that he could only be charged under the statute. The municipal court judge denied the motion and stayed proceedings pending appeal from his action. The Morris County Court affirmed the denial, as did the Appellate Division. 116 *N. J. Super.* 229 (1971). Defendant purports to appeal as of right to this court.[3]

---

[2] It is not suggested that neither the ordinance nor the statute would be violated simply because the alleged act took place on such grounds and we do not perceive that any such contention would be meritorious.

[3] The appellate procedure has been highly irregular. The municipal court action was interlocutory, appealable only on leave granted by the county court, *R.* 3:24, which was not sought. The county court's action was likewise interlocutory, requiring leave of the Appellate Division to appeal to that tribunal, *R.* 2:2–4, *R.* 2:5–6, which was also not obtained. The Appellate Division's judgment remains interlocutory, *R.* 2:2–5, requiring leave of this court to appeal to it, *R.* 2:2–2, *R.* 2:5–6, which was again not sought. Defendant's claim of a right of appeal to us without leave is on the basis of a substantial constitutional question, *R.* 2:2–1(a)(1). Such a basis is not available in the case of an interlocutory judgment nor, even if it were, is any constitutional question involved. Because of the general public importance of the issue presented, we will pass these irregularities and treat the case as if we had granted leave to appeal from the Appellate Division judgment. We add, that if the purpose

The matter of preclusion of the exercise of municipal police power by virtue of the nature of the field or state occupation of it, directly or indirectly, in whole or in part, has previously been thoroughly considered. Leading cases are *State v. Ulesky*, 54 *N. J.* 26 (1969); *Summer v. Teaneck*, 53 *N. J.* 548 (1969); *Belleville Chamber of Commerce v. Town of Belleville*, 51 *N. J.* 153, 157 (1968); *Mogolefsky v. Schoem*, 50 *N. J.* 588, 597–598 (1967); *In re Public Service Electric and Gas Co.*, 35 *N. J.* 358, 370–373 (1961); *Masters-Jersey, Inc. v. Paramus*, 32 *N. J.* 296 (1960); *Kennedy v. City of Newark*, 29 *N. J.* 178 (1959); *Cranberry Lake Quarry Co. v. Johnson*, 95 *N. J. Super.* 495, 508–511 (App. Div. 1967); *Chaiet v. East Orange*, 136 *N. J. L.* 375 (Sup. Ct. 1948).

██ The general principles distilled from the decisions are well recognized. The aspects pertinent to this case may be briefly summarized. Municipalities have been granted broad police power over matters of local concern and interest, both in numerous specified instances, as here, by *N. J. S. A.* 40:48–1 and generally by *N. J. S. A.* 40:48–2. Our Constitution, Art. IV, § VII, par. 11, ordains liberal construction of these powers. Their scope, however, does not extend to subjects inherently in need of uniform treatment or to matters of general public interest and applicability which necessarily require an exclusive state policy. In addition, a municipality may be foreclosed from exercising power it would otherwise have if the state has sufficiently acted in a particular field. Obviously local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow. Beyond such manifest conflicts with state policy, our cases establish that a municipality is precluded from exercising its powers in an area which the

here was to make a test case, it would have been more appropriate to bring a declaratory judgment proceeding. *See State v. Baird*, 50 *N. J.* 376, 378–379 (1967).

state has preempted. That concept is succinctly put in *Summer*:

* * * This follows from the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. * * * It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. * * * The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. (53 *N. J.* at 554-555)

The problem thus becomes one of determining the intent of the Legislature in this respect in enacting the quoted portion of *N. J. S. A.* 23:4-16. The general purpose of prohibiting the discharge of firearms across roads and the possession of loaded guns within specified distances of occupied dwellings and school playgrounds while engaged in hunting is quite evidently to try to protect, to some extent, certain segments of the local citizenry from personal injury caused by hunters. The evil is well known. During the relatively short upland game season and the much shorter deer season, open spaces in suburban areas and open country in rural sections are literally swarmed over by thousands of licensed hunters from all sectors of the state, seeking to shoot, for sport and recreation, a limited supply of game on a limited amount of available land. Unfortunately, many of these hunters are inept or careless in the handling and use of shotguns and a goodly number blatantly disregard signs forbidding trespassing (*see N. J. S. A.* 23:7-1 and -2; *N. J. S. A.* 2A:170-31). All of this has resulted in hunting too close to places where members of the local populace live or are, subjecting them and, we may say, domestic animals in rural areas as well, to possible personal injury. It cannot be disputed that protection from such harmful results represents a most substantial local interest in those municipalities where the evil is prevalent.

But the quoted prohibitions of *N. J. S. A.* 23:4–16 are narrow and if the claim of state preemption of the subject thereby is upheld, no municipality could adopt any more stringent regulation of hunters to better protect its citizens. The statute limits the possession of loaded guns for hunting purposes only with relation to the proximity of occupied dwellings and school playgrounds. There is no prohibition with respect to commercial or industrial structures, barns and outbuildings or playgrounds not connected with schools —all places where people customarily are and where the personal danger from too close gunfire would seem as great. Moreover, the statutory prohibition does not apply to persons "specifically authorized * * * in writing" by the owner or lessee of the property. Again, the potential danger would seem as great whether or not the gun possessor is specifically permitted to hunt within the proscribed distance. In addition, the statutory prohibitions are effective only when gun possession is "for the purpose of hunting, taking or killing any bird or animal"—perhaps a difficult requirement of proof in many instances to establish a violation. For problems which such types of requirements may raise in this field, see *State v. Meinken,* 10 *N. J.* 348 (1952), where this court had to decide the meaning of the phrase "engaged in hunting" found in another section of the law. We are not convinced from the provisions of the section that the Legislature thereby intended to prempt this entire field of safety to the general populace to the exclusion of municipal action.

This conclusion is buttressed when the entire fish and game law (*N. J. S. A.* Title 23) and regulations thereunder (known as the State Fish and Game Code, *N. J. S. A.* 13:1B–30) are canvassed. The intended purposes are very plain. They are, as the statutory section authorizing the Code sets forth, *N. J. S. A.* 13:1B–30, "protection, propagation, increase, control and conservation of fresh water fish, game birds, game animals, and fur-bearing animals * * * for their use and development for public recreation and food supply * * *." (Augmentation of the food supply is of

quite secondary importance in these times except in the case of commercial fishing.) The law has expressed the same object since its inception many decades ago. *N. J. S. A.* 23:2-2. The thrust is obviously in the direction of sport and recreation of participants. Thus one finds the law and the Code (promulgated annually) replete, almost exclusively, with the minutiae of licensing, open and closed seasons, bag and creel limits, allowed and forbidden methods of pursuing and taking fish and game, and the like. Provisions for the safety of non-hunters are few and far between. Besides the quoted portion of *N. J. S. A.* 23:4-16, which is simply repeated in the Code under the same section number (see N. J. Game Code 1972-73, p. 6), we can locate only *N. J. S. A.* 23:4-36, forbidding a person to go into the woods or field at any time with a firearm while under the influence of a drug or intoxicating liquor, and *N. J. S. A.* 23:3-4.2, adopted in 1954, requiring a hunting license applicant to whom a license has not been previously issued, to present evidence of satisfactory completion of a course in gun safety.

██ All in all it does not clearly appear that the Legislature intended to completely occupy this field of citizen safety and preclude municipalities from also dealing with local aspects of the problem. We think the most that can be said, without some further definite expression of legislative will, is that the prohibition against possession of a loaded gun, for the purpose of hunting, within a prescribed distance of an occupied dwelling or school playground simply represents a declaration of statewide policy of minimum regulation with respect to these two kinds of land uses. It follows that municipal action is not foreclosed. While the local legislation cannot conflict with state law by authorizing loaded gun possession in connection with hunting within a lesser distance in these two situations than the statute prescribes, it can, dependent on local conditions and pertinent circumstances, enact more stringent regulation in the field so long as such regulation is not unreasonable.

Mention should be made at this point of certain lower court decisions which have held in effect that other provisions of the state fish and game law preempted the areas involved in those cases and precluded differing municipal ordinances. In *Township of Hopewell v. Gruchowski*, 29 *N. J. Super.* 605 (Co. Ct. 1954), a local ordinance, which forbade any person from entering upon private property with firearms for the purpose of hunting unless the written consent of the owner or lessee had first been secured, was held to be beyond municipal power in view of the statewide scheme set forth in *N. J. S. A.* 23:7-1 for the punishment of trespassing hunters, requiring prior posting of the property or a verbal direction not to trespass. Two cases, *State v. Pinkos*, 117 *N. J. Super.* 104 (App. Div. 1971), certif. den. 60 *N. J.* 195 (1972), and *State v. Hackney*, 83 *N. J. Super.* 400 (Co. Ct. 1964), held void ordinances forbidding all hunting within the respective townships on the ground that the extensive and detailed state regulation of hunting evidenced complete occupation of the field. *Pinkos* distinguished the instant case (Appellate Division opinion) as a permissible municipal ban on activities directly affecting the public safety, whether or not concerned with hunting. The case at bar does not require us to reach the question of the correctness of those decisions. We note, however, that in each instance there is stronger indication of state legislative intent to preempt the particular area involved.

Plaintiff's ordinance, as we have said, is a copy of the quoted portion of *N. J. S. A.* 23:4-16 as it existed when the ordinance was adopted except for the omission of the qualifying phrase "for the purpose of hunting, taking or killing any bird or animal." Although it could have been made more stringent, perhaps Chester Township, as a very rural community, felt its citizenry was sufficiently protected by the same limited provisions as contained in the state enactment. It is no valid ground of objection that the ordinance is duplicative of the statute as far as its application to hunting is concerned. This state has long adhered to the doc-

trine that, when the state has not preempted the field, the same offense may, broadly speaking, be proscribed by both state and local legislation and the penalties may be different. *Hunter v. Mayor and Council of Teaneck Township,* 128 *N. J. L.* 164 (Sup. Ct. 1942); *Howe v. Treasurer of City of Plainfield,* 37 *N. J. L.* 145 (Sup. Ct. 1874) *Cf. Masters-Jersey, Inc. v. Paramus, supra* (32 *N. J.* 296). While this doctrine must have its limitations, they have not been exceeded here when petty offenses are involved at both levels and the necessity of statewide uniformity is not evident. (The bar of double jeopardy prevents prosecutions by both the State and the municipality in such cases. *Waller v. Florida,* 397 *U. S.* 387, 90 *S. Ct.* 1184, 25 *L. Ed.* 2d 435 (1970).)

Finally we add that we entirely agree with the Appellate Division that municipal power to regulate the use of firearms granted by *N. J. S. A.* 40:48–1(18) in the interest of public safety was not withdrawn as to the situation before us by the adoption of the state gun control law, *L.* 1966, c. 60, *N. J. S. A.* 2A:151–1 *et seq.* Insofar as hunters are concerned, that law, *N. J. S. A.* 2A:151–42, expressly saves all requirements of Title 23, which would include *N. J. S. A.* 23:4–16, and, that being so, we think that the gun control law does not preclude municipal regulation in the same area.

The judgment of the Appellate Division is affirmed and the case is remanded to the Chester Township Municipal Court for trial. No costs.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN, and Judges CONFORD and SULLIVAN—7.

*For reversal*—None.