Raymond L. Wilkes, J.
Are two contempts worth the price of one? Now there’s a question with which to conjure. Stir that gently — add a touch of double jeopardy — and ergo, the following:
The defendant’s motion to dismiss this indictment presents the opportunity as well as the responsibility to assay the application of the recent decisions of the Supreme Court of the United States and the New York Court of Appeals in People v. Colombo, and one of their most recent progeny, Matter of Capio, Appellate Division, Second Department, all of which bear upon the foregoing question.
The defendant requests relief upon the following grounds:
1. that this prosecution would place the defendant twice in jeopardy for the same acts (CPL 210.20, subd. 1, par. [e]);
2. that this prosecution has been unduly delayed to the detriment and prejudice of the defendant (CPL 210.20, subd. 1, par. [g]);
3. that the indictment is defective (CPL 210.20, subd. 1, par. [a]).
On April 17, 1970, in compliance with a subpoena, the defendant James Failla appeared before the October, 1969 Holdover Nassau County Grand Jury. After being duly sworn, he refused to answer questions put to him by that body, and even after immunity was conferred upon him by the Grand Jury, persisted in his refusal to answer lawful and proper interrogatories.
Thereafter, on May 15, 1970, the defendant appeared before the Hon. Paul Kelly, then County Judge (now Justice of the Supreme Court) of Nassau County. Judge Kelly directed him to return to the Grand Jury and answer questions put to him, but the defendant indicated that he would not obey this directive of the court.
Consequently, in an order dated May 19, 1970, Judge Kelly adjudged that the defendant had committed a criminal contempt under section 750 of the Judiciary Law in the immediate view and presence of the court for his “ contumacious and unlawful refusal, after being sworn, as a witness, to answer any legal and proper interrogatories, and for his wilful disobedience to the lawful mandate of this Court.” The defendant was then sentenced to 30 days in the Nassau County Jail.
Subsequently, on May 22, 1970, the defendant was indicted on two counts of criminal contempt under section 215.50 of the Penal Law. The first count, based upon subdivision 4 of section *981 215.50 of the Penal Law alleged that the defendant “ did contumaciously and unlawfully refuse to answer legal and proper questions and interrogatories directed and asked of him ’ ’ when he appeared before the Grand Jury on April 17, 1970. The second count, based upon subdivision 1 of section 215.50 of the Penal Law alleged that the defendant 1 ‘ did contumaciously and insolently conduct himself so as to: interrupt the proceedings of; and impair the respect due the authority of the said Judge Paul Kelly and the County Court of Nassau County sitting in official session, and in its immediate view, by refusing to answer legal and proper interrogatories and questions before the aforesaid Grand Jury ”.
In sum then, it must be borne in mind that the defendant was first held in contempt by Judge Kelly pursuant to section 750 of the Judiciary Law and later indicted under section 215.50 of the Penal Law for his conduct in (1) refusing to answer Grand Jury questions after having had immunity conferred upon him; and (2) for refusing to obey Judge Kelly’s lawful mandate.
The defendant was arraigned on June 30, 1970 pursuant to the- afore-mentioned indictment and entered a plea of not guilty. Thereafter, he requested and received several adjournments from the time of his arraignment until March 21, 1972 to await a decision in the matter of People v. Colombo (31 N Y 2d 947 [1972]), a case believed to have a significant bearing upon relevant areas of the law. Subsequent to March 21,1973 several additional adjournments and transfers were effected for a variety of reasons, and eventually, on May 10, 1973 this case appeared upon the calendar of the undersigned. On May 21, 1973 the defendant applied for and was granted the right to renew a prior motion to dismiss the indictment, and on May 29, 1973 he made the instant application, to which the People filed an affidavit in opposition on June 14, 1973. In essence, the defendant contends that identical actions, to wit, his initial refusal to answer Grand Jury interrogatories on April 19, 1970 and his subsequent refusal to answer such interrogatories on May 15, 1970 in disobedience of Judge Kelly’s directive, served as the basis for both his 30-day sentence under section 750 of the Judiciary Law as well as his subsequent indictment under section 215.50 of the Penal Law. He relies upon two recent New York cases: People v. Colombo (31 N Y 2d 947 [1972], supra) and Matter of Capio v. Justices of Supreme Ct., Kings County (41 A D 2d 235 [1973]), and because of the similarity of the facts in each of those cases to the matter at bar, it is worth examining each such cited case in detail.
*982 The Colombo case involved a claim of double jeopardy by a defendant challenging an indictment brought under the former Penal Law for the same conduct for which he had previously been punished under the Judiciary Law. As in the. instant case, Colombo refused to answer Grand Jury interrogatories after he had been afforded immunity from prosecution. Thereafter, he too was brought before a Judge (Dec. 8, 1965) who directed him to answer, and he likewise refused to obey the order of the court. On December 15, 1965 the Supreme Court, Kings County, stated that ‘1 by his contumacious and unlawful refusal after being sworn as a witness to answer any legal and proper interrogatories and for his wilful disobedience to the lawful mandate of this Court, defendant had committed a criminal contempt of Court in the immediate view and presence of the Court.” These are virtually the identical words used by Judge Kelly in holding the defendant Failla in contempt. In each case, the contempt citation recited two grounds — refusal to answer Grand Jury questions and refusal to obey the court’s lawful order. In Colombo, after appellate proceedings proved fruitless, the defendant offered to testify, but his offer was refused, and he served his 30-day1 sentence and paid his $250. fine,
In yet another parallel to the instant case, Colombo was then indicted on October 10, 1966 under former Penal Law (§ 600, subd. 6) “ for his contumacious and unlawful refusal, after being duly sworn as a witness, to answer legal and proper interrogatories,” and a motion to dismiss his indictment on the ground of double jeopardy was granted by the Supreme Court, Kings County, on August 22,1967. (Vincent D. Damiant, J.)
The Appellate Division, Second Department, in People v. Colombo (32 A D 2d 812) reversed the holding of Mr. Justice Pamiaei and summarily disposed of the defendant’s double jeopardy claim, citing three cases: (Matter of Marangelo v. Criminal Ct. of City of N. Y., 49 Misc 2d 414; People v. Costello, 21 N Y 2d 967; People ex rel. Maurer v. Jackson, 2 N Y 2d 259).
The facts in Costello and Marangelo (supra) were identical and both cases wended their way through the courts in tandem (officially reported in 49 Misc 2d 414 and 21 N Y 2d 967). The defendants Costello and Marangelo had refused to answer Grand Jury questions after having been afforded immunity from prosecution. They, too, had declined to obey the order of the court to return and answer the questions which had been put to them, and they were each held in contempt for refusal to obey the directive of the court.
Subsequently, the Grand Jury directed that' the New York County District Attorney file informations charging both Cos *983 tello and Marangelo with criminal contempt in violation of former Penal Law (§ 600, snbd. 6) which provides:
“ A person who commits a contempt of court, of any one of the following kinds, is guilty of a misdemeanor:
^ ^ SÉ*
6. Contumacious and unlawful refusal to be sworn as a witness, or, after being sworn, to answer any legal and proper interrogatories ” and defendants challenged the legality of the informations upon the ground of double jeopardy.
Hon. Louis J. Capozzoli, Justice of the Supreme Court, New York County, in dismissing the article 78 proceeding initiated by Louis Costello and Louis Marangelo held that their double jeopardy contentions were without merit and drew a distinction between the purposes of punishment "under the Judiciary Law and the Penal Law. In his view, section 750 of the Judiciary Law “ embodies the inherent power of the court to punish summarily for an offense against the dignity of the court ” (49 Misc 2d 414,416) whereas subdivision 6 of section 600 of the former Penal Law deals with “ an offense against the People of the State of New York”. (49 Misc 2d 414, 416.) Mr. Justice Capozzoli saw a clear distinction between punishment for refusal to obey the court’s mandate under section 750 of the Judiciary Law and punishment for refusal to answer questions before a Grand Jury under former Penal Law (§ 600, subd. 6). In addition, he noted that section 602, of the Penal Law stated that punishment for contempt under section 750 of the Judiciary Law does not bar an indictment under the Penal Law for the same offense.
The convictions of Costello and Marangelo were affirmed by the Appellate Term of the 'Supreme Court, First Department, and ultimately by the Court of Appeals in 21 N Y 2d 967 — in each instance without opinion. It would therefore appear that the rationale which Mr. Justice Capozzoli enunciated was adopted by the Court of Appeals.
The Appellate Division, Second Department, in People v. Colombo (32 A D 2d 812, supra), therefore quite understandably utilized the decisions in Costello and Marangelo in support of its reversal of the August 22, 1967 orders of Mr. Justice Damiahi which had dismissed the indictment against Colombo. Thereafter, the Court of Appeals in People v. Colombo (25 N Y 2d 641, supra) in affirming the decision of the Appellate Division, appeared to adopt the separate purpose doctrine originally articulated by Mr. Justice Capozzoli, and later spelled *984 out its adherence to that view in People v. Colombo (29 N Y 2d 1).
Certiorari was subsequently granted by the United States Supreme Court in Colombo v. New York (400 U. S. 16 [1970]) as a result of which the decision of the Court of Appeals reported in 25 N Y 2d 641 (decided Oct. 30, 1969) was vacated and the case remanded to that court for further consideration in light of the United States Supreme Court’s then recent decision in Waller v. Florida (397 U. S. 387) which merits parenthetical comment.
Waller involved a defendant who had been convicted in a Municipal Court in St. Petersburg, Florida, for destruction of city property and disorderly breach of the peace in violation of a city ordinance. The State of Florida thereafter brought the defendant to trial upon a charge of grand larceny based upon the very same acts as were involved in the violation of the St. Petersburg ordinances. . The United States Supreme Court held that since the municipal and State prosecutions were based upon the identiacl acts of the defendant, that the second trial would constitute double jeopardy in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
To resume our chronology, after the United States Supreme Court had remanded Colombo for further consideration, our Court of Appeals, with Hon. Matthew J. Jasen writing for a unanimous court in 29 N Y 2d 1, 5, distinguished Waller from Colombo and adhered to its “ original decision of affirmance dated October 30, 1969”. (25 N Y 2d 641.) In so doing, the Court of Appeals interpreted the United States Supreme Court’s holding in Waller as being restricted to the particular fact pattern therein, namely, that a person cannot be tried by the State after having been convicted for the same acts by a municipality. The Court of Appeals, perceiving no “ State-municipality dichotomy” (supra, p. 3) held Waller to be inapplicable, and in addition held that Waller involved two separate punishments for the same act; whereas in its view, Colombo involved punishment for two distinct acts, i.e., initially, refusal to answer Grand Jury questions, and secondarily, a separate refusal to obey an order of a court.
The Court of Appeals (supra, pp. 4, 5) also took pains to point out that the purpose of punishment under the Penal Law is different from that under the Judiciary Law, namely that commitment pursuant to the latter is ‘ ‘ not the, result of a criminal prosecution * * * was civil in nature, and *985 hence, the doctrine of former jeopardy is not applicable.” As hereinabove indicated, it adopted Mr. Justice Capozzoli’s reasoning to the effect that punishment under the Judiciary Law, “ serves to protect the integrity and vindicate the power of our courts ’ ’, whereas punishment pursuant to the Penal Law “protects the interests of the State to obtain evidence which will benefit the community as a whole ”. It further held that “we are faced with separate acts, meriting separate punishment, for distinct purposes — a far divergent situation from Waller where there was multiple punishment for the same act.”
Certiorari was granted yet again (Colombo v. New York, 405 U. S. 9), and the United States Supreme Court, apparently not desiring to be denied, proceeded to reject the view that a difference existed between contempts under the Judiciary Law and the Penal Law, and held that for the purposes of the Federal Double Jeopardy Clause, the defendant had been fined and sentenced for a criminal contempt. It further appears that the United States Supreme Court considered the alleged acts of contempt as being “partially intertwined” — that is, that the initial refusal to testify did not mature into a contempt until Colombo refused to obey the court’s order to return and answer Grand Jury questions.
The decision of the Court of Appeals (29 N Y 2d 1) was thereupon vacated and the matter was remanded for further proceedings not inconsistent with this second decision of the United States Supreme Court.
Upon reargument in the Court of Appeals, People v. Colombo (31 N Y 2d 947 [1972], supra), the court reversed the order of the Appellate Division entered June 16, 1969 (32 A D 2d 812) and dismissed the indictment. In so doing, the court held that where a defendant has been held in contempt under the Judiciary Law for refusal to obey the order of a court to answer Grand Jury questions and is subsequently indicted under the Penal Law for that same act, that such prosecution is barred by double jeopardy. The court found it neither necessary nor desirable to respond to the Supreme Court’s “partially intertwined” dictum. It simply said (p. 949): “The same evidence proves the Judiciary Law contempt for which defendant was previously punished and the Penal Law contempt charged in the indictment, and the elements of the two contempt charges are the same. Since the Supreme Court of the United States has held that defendant’s previous punishment for contempt of court pursuant to the Judiciary Law was for ‘ criminal ’ contempt under the particular facts of this *986 case (Colombo v. New York, 405 U. S. 9, 10-11), defendant’s subsequent indictment for the same offense under section 600 of the former Penal Law is barred by the double jeopardy clause.”
Still more recently, the Appellate Division, Second Department — in Matter of Capio v. Justices of Supreme Ct., Kings County (41 A D 2d 235 [April 2,1973]) handed down a decision crushingly apposite to this discussion.
With a by now somewhat familiar ring, it seems that on January 27, 1970 Bruno Capio appeared before the Kings ; County Grand Jury, and after having been afforded immunity from prosecution, refused to answer questions propounded to him by the Grand Jury. Then, on March 12, 1970, he. was directed by the court to answer the Grand Jury interrogatories but refused to comply with the court’s directive. On March 19, 1970 he was adjudged guilty of contempt of court under section 750 of the Judiciary Law ‘ ‘ for his contumacious and unlawful refusal after being sworn as a witness to answer any legal and proper interrogatories [before the Grand Jury] and for his wilful disobedience to the lawful mandate of this Court ”. (41 A D 2d 234, 236.) He was sentenced to 30 days’ imprisonment and fined $250.
Thereafter, on June 10, 1970, the petitioner was indicted for having committed a contempt in violation of section 215.50 of the Penal Law for his refusal to answer questions “ before the Kings County Grand Jury on January 27, 1970 and after being granted immunity, said Bruno Capio refused to answer questions posed to him by the Assistant District Attorney of Kings County.” His motion to dismiss the indictment on the ground of double jeopardy was denied on February 1, 1973. The petitioner then brought an article 78 proceeding before the Appellate Division, Second Department, in order ‘ ‘ to prohibit the holding of a trial under that indictment on the ground that he had already been punished for the offense therein alleged. ’ ’
Mr. Justice J. Irwin Shapiro, in his customarily incisive style writing for a unanimous Court héld that if the order finding the petitioner guilty of contempt was “based solely on his refusal to obey the direction of the court to return to the Grand Jury and to there answer the questions to be asked of him”, (41 A D 2d 235, 236 237) then a subsequent indictment for his initial failure to answer Grand Jury questions would not be barred by double jeopardy. That since the initial failure to testify before the Grand Jury was a separate offense *987 under section 215.50 of the Penal Law, the violation of which occurred at the moment of refusal and did not require a Judge’s directive, he could have been indicted for that alone.
But in Capio as Mr. Justice Shapiro so perceptively and painstakingly pointed out, the lower court had held defendant in contempt for both his prior refusal after being sworn to answer Grand Jury questions as well as for his later refusal to obey the directive of the court. The Appellate Division therefore held that since “ the contempt citation was based upon both contempt charges, the petitioner may not now be prosecuted separately for one of them * * * and respondents are hereby prohibited from proceeding with said trial” (supra, p. 238). (Italics supplied.)
A peripheral but nonetheless pertinent question arises as to the authority of a court under section 750 of the Judiciary Law to hold a defendant summarily in contempt for his failure to answer questions put to him by a Grand Jury — since such act of contempt occurs outside the presence of the court. However, the Matter of Second Additional Grand Jury of County of Kings, (Cioffi) (21 MisC 2d 808, 811 [1959]) is dispositive.' of that issue. The defendants therein weré held in contempt pursuant to section 750 '(subd. A, par. 5) of the Judiciary Law “for contumacious and. unlawful refusal to answer the legal and proper interrogatories put to each of them in the Grand Jury ” after they had been duly sworn as witnesses and granted immunity from prosecution. The order of the County Court was subsequently affirmed by the Appellate Division in 10 A D 2d 425 and by the Court of Appeals in 8 N Y 2d 220. By virtue of these affirmances, the authority of the lower court to adjudicate the defendant in contempt was implicitly upheld.
In opposition to the instant application, the People rely upon section 215.55 of the Penal Law as one basis for their contention that this indictment does not constitute double jeopardy. That statute states: ‘ ‘ Adjudication for criminal contempt under subdivision A of section seven hundred fifty of the judiciary law shall not bar a prosecution for the crime of criminal contempt under section 215.50 based upon the same conduct but, upon conviction thereunder, the court, in sentencing the defendant shall take the previous punishment into consideration.”
This statute is supported by an 1892 decision of the Court of Appeals in People v. Meakin (133 N. Y. 214). Unfortunately, however, from the People’s point of view, People v. Colombo (31 N Y 2d 947, supra) and Matter of Capio v. Justices of Supreme Ct., Kings County (41 A D 2d 235, supra) hold that *988 an adjudication of contempt under section 750 of the Judiciary Law for refusal to answer questions ¡before a Grand Jury would be a bar to prosecution under section 215.50 of the Penal Law for the same conduct. The holdings' in Colombo and Capio (supra) therefore clearly appear to supersede the application of section 215.55 of the Penal Law as now urged by the People.
The People further contend that certain language in the Court of Appeals decision in Colombo (31 N Y 2d 947, 949) is controlling herein, namely: “ Although defendant could have been properly indicted for his refusal to testify before the Grand Jury on October 14, 1965, after having been granted full immunity * * * and such indictment would not be barred by double jeopardy
The Appellate Division in Capio has referred to the above language of the Court of Appeals in Colombo, as follows: ‘ ‘ When deciding the case on remand, the Court of Appeals clearly indicated that if the Penal Law indictment were based solely on the refusal to answer questions before the Grand Jury and if that were not included in the punishment meted out by the court for the separate Judiciary Law contempt, double jeopardy would not be a defense. ” (41 A D 2d 235, 237 footnote.) (Italics supplied.)
In the instant case, however, the indictment against the defendant was based upon both his refusal to answer Grand Jury questions and his refusal to obey the lawful mandate of the court. In addition, the defendant in the instant case, as in Capio, was adjudged in contempt for both his refusal to answer Grand Jury questions and his refusal to obey the mandate of the court.
The final Colombo decisions by the Supreme Court of the United States as well as the New York Court of Appeals, in addition to the Capio, Appellate Division decision are all too apparently applicable to and controlling of the instant case, and clearly foreshadow the duty of this court.
Colombo (supra) held in sum that a person once punished for contempt pursuant to section 750 of the Judiciary Law for refusal to obey a lawful mandate of the court to answer interrogatories before the Grand Jury cannot be subsequently prosecuted under the Penal Law for the same act. That holding bars prosecution under the second count of the indictment presently before this court since the defendant has already been punished pursuant to the Judiciary Law for his refusal to obey the order of the court.
*989 Capio held that when a person is adjudged in contempt pursuant to section 750 of the Judiciary Law for (1) refusal to answer questions before a Grand Jury, and (2) refusal to obey a court order to answer Grand Jury interrogatories, he 11 may not now be prosecuted separately for one of them.”
To reiterate, in the cause at bar, the defendant was held in contempt under section 750 of the Judiciary Law for both refusing to answer Grand Jury interrogatories and for refusing to obey the lawful mandate of the court. Under the holding in Capio (p. 238), the defendant cannot possibly be prosecuted ‘‘ separately for one of them.”
The remorseless applicability of all of the foregoing bars, beyond cavil, prosecution of this defendant under both the first and second counts of this indictment upon the ground of double jeopardy. In view of this conclusion, the remainder of the defendant’s application is rendered academic.
It has been most truly said that the test of a genuinely civilized society is the manner in which it treats its accused. The •foregoing opinion is a most modest affirmation of that so-considered premise.
But, since we seem to live in a day and age when more ocular forums appear to reflect the temper of the times, this court takes pains to reiterate the oft-expressed view that this society’s ultimate crucible ever remains the reasoned, rational, rule-abiding atmosphere which only a court of law can provide, with proper safeguards for the People and the prosecuted alike.
It is, therefore,
Ordered, that Indictment No. 29457 be and the same hereby is in all respects dismissed, and it is further Ordered, that bail heretofore set be exonerated.