THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAM THOMAS, Defendant-Appellant.

(No. 57514;

First District (2nd Division)—March 12, 1974.

Robert B. Rosen, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Algis F. Baliunas, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant Sam Thomas, tried by a jury on three counts of unlawful use of weapons, was found guilty and sentenced to a term of 2 to 5 years. The indictment, as originally returned by the grand jury, charged violations on September 11, 1968, in five counts, two alleging violations of the Illinois Uniform Narcotic Drug Act[1] and three counts charging offenses of the unlawful-use-of-weapon provisions of section 24—1(a)(4) and (a)(7) of chapter 38 of the 1967 Illinois Revised Statutes.[2] On the day the trial commenced on motion of the State, the court dismissed the two counts charging violations of the Uniform Narcotic Drug Act.

On appeal, defendant presents the following issues for review:

(1) Whether the admission of testimony regarding other illegal conduct on the part of the defendant prejudiced his right to a fair trial;

(2) Whether defendant's right to a fair trial was prejudiced by his description in the indictment and verdict forms as having an alias;

(3) Whether the trial court properly restricted defense counsel's cross-examination of a State's witness; and

(4) Whether the State established the elements of the offense charged.

The following testimony of the State witnesses describes the events, in 1968, as they chronologically developed.

Robert Walker testified that in August and September he was chief

---

[1] Ill. Rev. Stat. 1967, ch. 38, par. 22—3.

[2] The pertinent parts of chapter 38, pars. 24—1(a)(4) and (a)(7) are:

"(a) A person commits the offense of unlawful use of .weapons when he knowingly:

&ast; &ast; &ast;

(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm; or

&ast; &ast; &ast;

(7) Sells, manufactures, purchases, possesses or carries any weapon from which more than 8 shots or bullets may be discharged by a single function of the firing device &ast; &ast; &ast;."

investigator for the Illinois Crime Investigating Commission (hereinafter Commission); that on August 22 he met the defendant in a tavern in Marseilles (LaSalle County), Illinois, and Thomas asked if Walker was interested in purchasing some explosives. Walker indicated he was. On August 27, Walker again saw the defendant in Marseilles when the defendant told him about a field of marijuana he had been harvesting for about 5 years and that the defendant had a connection on the south side of Chicago to retail the processed marijuana.

Walker said that on August 28, along with two federal narcotics agents, he again saw the defendant in Marseilles. On August 29, Walker testified, he telephoned the defendant at his home and talked about a contact regarding hand guns and a machine gun. Walker said that in a telephone conversation with Thomas on September 10, Thomas, in response to a question, stated he had not contacted the man that was going to fix the machine gun to make it fully automatic.

Walker next testified that on September 11 he talked with Thomas on the telephone, at which time various personnel of the federal and state narcotic bureaus were present. At this time, Walker told Thomas a friend would pick him up in Marseilles and Thomas said he had and would bring with him the machine gun and marijuana. Again, on September 11, agent Ronald Ewert (whose testimony is set forth in detail later in this opinion) telephoned him from Marseilles, at which time Thomas talked on the phone and discussed the machine gun and marijuana.

Walker further testified that later on September 11 he saw Thomas in Chicago in a motor lodge parking lot. At that time, Thomas told Walker the machine gun and marijuana were in the trunk of the automobile, whereupon Thomas removed from a white box in the trunk a machine gun and small glassine bag containing a green crushed plant. Thomas was then arrested.

On cross-examination, Walker admitted he did not know whether the subject gun (admitted in evidence as an exhibit) is capable of discharging eight or more shots by a single function of the firing device. Defendant's efforts to ascertain the facts or circumstances of witness Walker's termination of employment with the Commission were prevented by numerous timely State objections.

Ronald Ewert, an investigator for the Commission, testified he saw Thomas on September 11 at a tavern in Marseilles; that Ewert drove (in a State car) Thomas to his home; and that Thomas went into the house and came back carrying a large white cardboard box in his arms which was put in the trunk of the car.

After a telephone call to Ewert's office in Chicago, they drove, in the State car, to Chicago whereupon he parked in a motor lodge parking

area. At that time they greeted Walker; that Walker asked Thomas if he had the stuff; that Thomas responded he did; that the trunk of the car was opened and in a white cardboard box was a submachine gun, a clip, and a brown bag from which Thomas pulled a small plastic bag and said "Here's the stuff." At that time Thomas was arrested.

On cross-examination, Ewert said he did not specifically know what a semi-automatic weapon is and did not know whether the subject gun could discharge eight shots or bullets by a single function of the firing device.

On redirect, Ewert stated in August 1968 the defendant was known to him by the name of Sam Polatto.

Charles Siragusa, executive director of the Commission, testified that he was present in the parking lot of the motor lodge in Chicago on September 11 when he saw Thomas, Ewert, and Walker. After the trunk was opened, he observed a box which contained a spitfire submachine gun and a plastic bag.

Siragusa also admitted on cross-examination that he did not know whether the weapon could fire more than eight shots or bullets by a single function of the firing device. Siragusa did refer to the gun as a spitfire carbine as defined by a federal statute.

Defendant's attempt to cross-examine Siragusa relative to witness Walker's termination of employment with the Commission was prevented upon numerous objections by the State.

Donald Norton testified, on behalf of the State, that at the date of his testifying he was employed by the Commission, and that on September 11 he was employed by the Illinois Division of Narcotics and was assisting, on that date, agents of the Commission. His testimony, relative to September 11, was substantially the same as Walker and Siragusa, except he identified the material in the trunk of the car as a quantity of crushed green plant.

After the trial commenced, the State was allowed by the court over defendant's objection to remove the subject gun—then an exhibit—in order to have the Chicago Police Department criminalistics division examine the gun.

Thereupon, Donald E. Smith of the Chicago Police Department crime laboratory testified regarding his examination of the gun to determine its capability as being fully automatic. Smith testified that he removed a sears spring and connected a trigger spring to the sears pin, whereupon he fired 16 rounds; that he was not able to fire all the bursts until he had converted the gun; that it would take 15 to 20 minutes to convert the weapon so as to fire it automatically.

Defendant presented no evidence in his behalf.

The instructions given by the court to the jury defined the crime of unlawful use of weapons as follows:

> "A person commits the crime of Unlawful Use of Weapons who knowingly:
> (a) Carried a firearm concealed in a vehicle, or
> (b) Possesses a weapon from which more than eight (8) shots or bullets may be discharged by a single function of firing device."

The "issues" instruction followed the said definition and the form as set forth in IPI-Criminal no. 18.03. These instructions applied to only two of the three counts upon which defendant was tried. Two forms of verdict were given to the jury, one which read "We the jury, find the defendant Sam Thomas, also known as Sam Pilotto [the record indicates two different spellings], guilty of unlawful use of weapon"—which the jury returned—the other followed the same style except that it provided for a finding of not guilty.

The court, in sentencing the defendant, imposed the sentence, within the statutory limits, for the felony charge, violation of section 24—1 (a)(7), which was count III of the indictment.

## I.

Defendant contends that, during the trial, the prosecution elicited testimony from State witnesses regarding the offenses of narcotic and firearm violations allegedly committed by the defendant, and that, since these matters were not related to the charges for which the defendant was being tried, their admission into evidence served to prejudice defendant's right to a fair trial. As to the narcotic violation, we agree.

In the course of their testimony, witnesses Norton and Ewert each made one or two brief references to a quantity of "crushed green plant" and "the stuff." It is true defense counsel himself on cross-examination questioned Norton regarding the "crushed green plant." However, this was after the State was permitted to introduce the evidence.

■■ Walker testified that on August 22 he saw the defendant in a tavern in Marseilles where defendant asked him if he would be interested in purchasing some explosives and Walker responded that he would. Walker stated that on August 27 he saw the defendant once again in Marseilles where defendant told him he had a marijuana field which he had been harvesting for 5 years, and also that he had a connection on the south side of Chicago to retail the processed marijuana. At that time defendant also inquired whether Walker wanted to assist in harvesting the marijuana. Walker then finally testified to conversations he had with defendant during the period from August 29 to September 11 when de-

fendant was arrested. Each time the witness related the contents of his conversations with defendant, defense counsel made timely objections— and in some instances motions for mistrial—which the trial court over-ruled.

It is the well-established general rule that:

> "[E]vidence of commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission." *People v. Cage* (1966), 34 Ill.2d 530, 533, 216 N.E.2d 805.

The State argues that Walker's testimony as to the content of his conversations with defendant "established knowledge in that it showed a prior course of conduct leading up to defendant's arrest on September 11, 1968." Walker's testimony regarding conversations prior to August 29 served only to show that defendant had engaged in, or was willing to engage in, criminal acts other than the one at issue. The conversations regarding the harvesting of marijuana, its potential sale, and the sale of explosives do not establish knowledge that one has possession of a machine gun. The prejudicial effect of this testimony is readily apparent, far outweighing any probative value the testimony might have had and, thus, should not have been admitted under the general exclusionary rule (*People v. Cage, supra*).

■■ In support of its position, the State cites *People v. Hurry* (1943), 385 Ill. 486, 52 N.E.2d 173, where a police officer testified to a conversation with defendant wherein the defendant made admissions and statements implicating himself in a crime other than the one at issue. Holding that the officer's testimony had been properly admitted, the supreme court stated:

> "It is quite obvious that a witness in relating a conversation with a person accused of crime, where it contains statements relative to the one under investigation as well as other matters, cannot well repeat only a part of the conversation without making such witness the judge of what pertains to the crime under investigation. * * * *Of course, if there is a separate conversation in which a different crime is admitted it should not be received* * * *." (Emphasis supplied.) 385 Ill. at 492.

The case at bar is readily distinguishable from *Hurry* since, here, Walker's references to other criminal acts were made as he testified to two conversations with defendant prior to and separate from the conversation dealing with the particular charge in issue. Placed in the context

of the entire testimony, the State seemed to emphasize the evidence concerning the marijuana even though at the start of the trial the State moved to dismiss those charges. The impact of this testimony on the jury could only have been prejudicial and, therefore, erroneous.

## II.

Ordinarily, in light of our holding above, discussion of the other points raised by the defendant might not be necessary. However, as we are remanding this case to the circuit court, further discussion might be helpful in any subsequent proceedings.

Defendant contends that his right to a fair trial was prejudiced by his being described in the indictment and verdict forms as having an alias.

■■ A defendant may be properly charged in an indictment in his proper name as well as under an alias. (*People v. Behymer* (1964), 48 Ill.App.2d 218, 225, 198 N.E.2d 729.) Here, when the trial judge read the indictment to the prospective jurors and identified the defendant as Sam Thomas, otherwise called Sam Pilotto, defense counsel failed to object. Further, there was no dispute that defendant was also known under the alias. Ronald Ewert testified that in August 1968 he knew defendant by the name of Sam Polatto. This is the only reference during the course of the trial to the name Sam Pilotto. Under such circumstances, we cannot understand the real purpose of the use of the so-called alias. Upon a re-trial, we suggest this matter be considered so as to determine the need and propriety of the use of an alias.

## III.

Defendant also contends that the trial court improperly restricted defense counsel's cross-examination on matters going to the credibility and possible bias of a key State witness.

During the cross-examination of Robert Walker, the witness disclosed that he had resigned from the Commission. Defense counsel then attempted to ascertain whether Walker had resigned by request. The trial court sustained the State's objection to this question, as well as objections to defense counsel's inquiries regarding possible financial irregularities involving Walker and his resignation from the Commission when these questions were directed to both Walker and Charles Siragusa. By so curtailing defense counsel's cross-examination, defendant argues that the trial court prevented him from establishing any factual basis for impeaching the credibility of the witness.

While defendant correctly maintains that defense counsel in a criminal trial should be accorded the widest latitude in his cross-examination of adverse witnesses so as to reveal any possible bias or prejudice

(*People v. Naujokas* (1962), 25 Ill.2d 32, 37, 182 N.E.2d 700), we must be mindful of the related principle that the extent of defense counsel's inquiry rests within the sound discretion of the trial judge and only when such discretion has been clearly abused to the manifest prejudice of the defendant will a reviewing court interfere. *People v. Nugara* (1968), 39 Ill.2d 482, 487-88, 236 N.E.2d 693.

■■ Defendant's attorney made no offer of proof to adequately explain to the trial court the nature and scope of the testimony he was seeking to elicit. Of course, the questions propounded clearly suggest an attempt to establish evidence which might well go to the issue of Walker's credibility, which is a permissible area of inquiry if proper questions are presented. Should this cause be re-tried, we would expect this matter to be so handled.

## IV.

Defendant strongly urges that the State failed to establish, as to count III, the elements of the offense for which he was found guilty and sentenced. Defendant was tried on a three-count indictment charging unlawful use of a weapon and predicated upon chapter 38, section 24—1 (a)(7) (count III) and section 24—1(a)(4) (counts IV and V). The jury, by their general verdict, found him guilty of unlawful use of a weapon.

Defendant maintains that the State failed to prove—the charge in count III—that the alleged weapon was one "from which more than 8 shots or bullets may be discharged by a single function of the firing device." To support his position, defendant points to the testimony of the State's witnesses as set forth in detail in the first part of his opinion.

Defendant argues that, since the State's evidence demonstrated that the weapon was capable of firing multiple bursts of shots only after its conversion by Officer Smith, the State failed to prove that the weapon allegedly possessed by defendant at the time of his arrest fit the requirements of the statute under which he was convicted. Defendant urges that, "the word 'may' in the statute can be reasonably interpreted only as referring to a point of time concomitant with the alleged occurrence of the offense, and not to a point of time subsequent thereto." Defendant further contends that "if the statute were to be construed otherwise, it would be unconstitutionally vague for want of certainty and ascertainable standards of conduct."

■ The statute states that "a person commits the offense of unlawful use of weapons when he *knowingly:* * * * possesses or carries * * * any weapon from which more than 8 shots or bullets may be discharged by a single function of the firing device * * *." Count III of the in-

stant indictment is couched in substantially the same language. There-fore, the State must prove beyond a reasonable doubt that the defendant *"knowingly possessed and carried"* such a weapon.

There is no doubt that none of the State witnesses who testified about the events of September 11, 1968, either themselves knew or presented any testimony that the defendant knew he possessed and carried such a weapon. The conversations testified to by the investigating officers (State witnesses) between themselves and the defendant, do not, in our opin-ion, justify any basis for an inference upon which proof beyond a rea-sonable doubt may be based.

■■ We, therefore, hold that as to count III the trial court should have granted the defendant's motion for a finding of not guilty at the close of the State's case. Not having done so, we now reverse the finding of guilty as to that count. It is not necessary to resolve defendant's other conten-tions as to this point.

## V.

At the conclusion of the case, the trial court entered judgment on the general verdict of guilty. For the reasons set out above, we reverse the judgment and sentence imposed by the circuit court of Cook County as to count III (ch. 38, par. 24—1(a)(7); we reverse the judgment of guilty as to counts IV and V (each ch. 38, par. 24—1(a)(4)) and remand the matter to the circuit court of Cook County for a new trial as to counts IV and V.

Judgment reversed as to count III; judgment reversed and remanded as to counts IV and V.

HAYES, P. J., and LEIGHTON, J., concur.