### Ex parte Edith REYNOLDS.

### No. 60647.

Court of Criminal Appeals of Texas, En Banc.

June 20, 1979.

Rehearing Denied Sept. 19, 1979.

Richard L. Griffin, Huntsville, for appellant.

Thomas F. Lee, Dist. Atty., Del Rio, Douglas M. Becker, Asst. Atty. Gen. of Texas, Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is a post-conviction habeas corpus application filed pursuant to Art. 11.07, V.A.C.C.P.

Appellant is serving a thirty-five year sentence for the murder of her husband. She was first tried in 1970 in Kinney County and sentenced to life. On appeal her conviction was reversed because the evidence was insufficient to corroborate the testimony of her daughter who was an accomplice witness in the case. *Reynolds v. State*, Tex.Cr.App., 489 S.W.2d 866. After remand she was convicted in a second trial in October 1973 after a change of venue to Val Verde County and sentenced to thirty-five years. On appeal that conviction was affirmed in a per curiam opinion. Petitioner now contends her second trial after the first conviction was reversed for insufficient evidence constituted a violation of her constitutional protection against double jeopardy, as recently held in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15.

The State challenges petitioner's request for relief with two arguments. First, it is asserted that insufficient evidence to corroborate an accomplice witness under Art. 38.14, V.A.C.C.P., does not constitute insufficient evidence to support the conviction under the *Burks-Greene* rule. Second, the State argues that the *Burks-Greene* rule should not be given retroactive application.

In *Burks v. United States*, supra, the Court reviewed its prior decisions in the area of the double jeopardy protection and the power to retry a defendant after reversal on appeal. In resolving "the present state of conceptual confusion existing in this area of the law" the Court concluded:

"In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies noth-

ing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e. g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. . . .

"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the Government's case was so lacking that it should not have been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty."

The State apparently contends that insufficient evidence to corroborate an accomplice witness is in the class of "trial error" instead of "failure of proof." The State also calls attention to the concurring opinion of Justice Rehnquist, in which he took the opportunity to emphasize "the varying practices with respect to motions for new trial and other challenges to the sufficiency of the evidence both at the trial level and on appeal in the 50 different States in the Union."

We agree the requirement that the testimony of an accomplice witness be corroborated is a practice in this State that varies from that of many others. It does not follow, however, that error under this rule is mere "trial error" as distinguished from "failure of proof." Art. 38.17, V.A.C. C.P., cited in petitioner's brief filed in response to the State's first brief, provides:

"In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction."

Thus, under this statute, insufficient evidence to corroborate an accomplice witness requires a verdict of acquittal. As quoted above from *Burks*:

"Since we necessarily afford absolute finality to a jury's *verdict* of acquittal . . . it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty."

In this jurisdiction, when the evidence is insufficient to corroborate an accomplice witness, the jury cannot properly return any verdict except an acquittal. We therefore hold that the *Burks-Greene* rule does apply to cases in which the evidence is insufficient to corroborate the testimony of the accomplice witness.

We now turn to the issue of whether the *Burks-Greene* rule should be given retrospective application. In *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29, the Court considered whether the double jeopardy doctrine announced in *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, should be given retroactive effect, and held that it should.

In *Robinson* the Court stated that the three-pronged test[1] of *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, cannot be rigidly applied to double jeopardy issues:

"The prohibition against being placed in double jeopardy is likewise not readily susceptible of analysis under the *Linkletter* line of cases . . .

---

1. These three prongs, as succinctly stated in *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, are (1) the purpose of the rule, (2) the extent of law enforcement reliance on the old rule, and (3) the effect of retroactive application on the administration of justice.

"*The guarantee against double jeopardy is significantly different from procedural guarantees held* in the *Linkletter* line of cases *to have prospective effect only.* While this guarantee, like the others, is a constitutional right of the criminal defendant, *its practical result is to prevent a trial from taking place at all,* rather than to prescribe procedural rules that govern the conduct of a trial. . . . [T]he Court's ruling [in *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435] was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitutional procedural rights of the defendant." (Emphasis added.) 409 U.S. at 508–09, 93 S.Ct. at 878.

Likewise, *Burks* and *Greene* were "squarely directed to the prevention of the second trial's taking place at all."

The State in its brief takes the position that *Robinson* in effect established a retroactivity test for double jeopardy holdings that looks only to the last two prongs of the three prong test of *Linkletter.* We believe that position misreads *Robinson.* Instead of emphasizing the "reliance" prong of *Linkletter, Robinson* simply stated, "The element of reliance embodied in the *Linkletter* analysis *will not be wholly absent* in the case of constitutional decisions not related to trial procedure . . . ." (Emphasis added.) We construe this phrasing to indicate that the reliance component, while not wholly absent, will be of lesser significance in the double jeopardy area. We therefore look to see what role the reliance prong played under *Linkletter.*

In *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248, the three prongs of *Linkletter* and their relative roles were described in this language:

"As we most recently summarized them in *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 'The criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards and (c) the effect on the administration of justice of a retroactive application of the new standards.'

"*Foremost among these factors is the purpose to be served by the new constitutional rule.* . . .

" . . . we have relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity."

Thus, under *Linkletter,* the purpose of the new rule is of primary significance, and the other two prongs are heavily relied on only when the purpose of the rule does not clearly favor either retroactivity or prospectivity. *Robinson* does not appear to accord any weight to the third prong, or at least none beyond what is incorporated into the second.

What then is the purpose of the *Burks-Greene* rule and does it clearly favor retroactivity or prospectivity? The *Burks-Greene* decisions stand for the rule that a defendant's appeal or request for a new trial does not "waive" his right to an acquittal. The necessary prerequisite to application of the rule is that the defendant show he was entitled to an acquittal. Once such a showing is made it necessarily follows that the State is barred from subjecting him to a second trial. This is wholly unlike the issue of retroactivity where the alternatives are whether the State can obtain a conviction without observation of the new rule, or must seek a conviction, if any, in compliance with the new rule. The issue under *Burks-Greene* is whether the State should be allowed a post-acquittal conviction, and no changes in the rules for obtaining it are implicated. As stated in *Burks,* "Given the requirements for entry of a judgment of acquittal, the purposes of the Clause would be negated were we to afford the Government an opportunity for the proverbial 'second bite at the apple.'" The purpose of the rule clearly points to retroactive application.

Since under *Robinson* "[t]he element of reliance embodied in the *Linkletter* analysis" is not "wholly absent," we must ask whether it is of sufficient gravity to outweigh the clear purpose of the rule. It is true, as stated in *Burks* itself, that the Court's prior holdings in the area "can hardly be characterized as models of consistency and clarity." On the other hand, what prejudice would the State suffer from retroactive application of the new rule as a result of its reliance on the old rule? The prejudice in retroactive application of procedural rules arises primarily from the denial of use of evidence and the burden of retrial. No such prejudice would accompany a retroactive application of the *Burks-Greene* rule simply because it would bar rather than require a retrial, and it in no way affects what evidence the State may use. The State in its brief suggests prejudice "if petitioner might have been tried upon other charges following [her] first conviction," but the State abandoned any such other prosecutions to reprosecute the reversed case. We find such prejudice to be too speculative in nature. If this were sufficient to bar retroactive application, then all rules would be prospective only. Also, as stated in *Burks* itself:

"[T]he prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble."

In sum, we find no demonstrable prejudice to the State despite good faith reliance on the old rule.

■ The rule is not one that creates a jeopardy bar after proceedings that do not afford the State even one "bite at the apple," (see, *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346; *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24), and we express no opinion as to the retroactivity vel non in such cases. In every case to which the *Burks-Greene* rule could apply, past or future, the State is not denied its opportunity to take one "bite at the apple." We hold the rule should be given full retroactive application and that petitioner is entitled to relief.

The judgment against petitioner in cause 1519 in the 63rd Judicial District Court of Kinney County (petitioner's first conviction) is ordered reformed to show an acquittal, the judgment against her in cause 3671 in the 63rd Judicial District Court of Val Verde County (petitioner's second conviction after a change of venue from Kinney County) is set aside, and she is ordered discharged from any further confinement under said judgment. A copy of this opinion will be sent to the Texas Department of Corrections.

It is so ordered.

ONION, P. J., and CLINTON, J., concur.

DOUGLAS, Judge, dissenting.

The majority asks the wrong question and necessarily arrives at the wrong answer.

New interpretations of the double jeopardy clause are not per se retroactive. See *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Jackson v. Justices of Superior Court of Massachusetts*, 549 F.2d 215 (1st Cir.) cert. denied, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977). However, the traditional retroactivity test outlined in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), is not readily applicable to non-procedural rights. Recognizing this, the Supreme Court, in *Robinson v. Neil*, supra, has applied a more flexible test for determining retroactivity. Although, as the *Robinson* Court candidly concedes:

"We would not suggest that the distinction that we draw is an ironclad one that will invariably result in the easy classification of cases in one category or the other."

The majority correctly interprets the flexible rule utilized in *Robinson*; however, in applying it to these facts, they misstate the issue as "whether the State should be allowed a post-acquittal conviction." The issue can be better framed by looking at the ultimate purpose of the protection against double jeopardy. The purpose underlying the decisions in *Burks* and *Greene* is, as the

majority earlier observes, " 'squarely directed to the prevention of the second trial's taking place at all.' " In a similar light, the Supreme Court stated the purpose of the protection against double jeopardy as follows:

"It is a guarantee against being twice put to *trial* for the same offense * * * the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)."

This purpose, of preventing the second trial, can be fully accomplished prospectively.[1] It cannot be accomplished after the second trial has occurred. We must, therefore, approach the instant case by acknowledging that the double jeopardy clause, as currently interpreted, has been violated. The proper question concerning retroactivity, in keeping with the flexible approach used in *Robinson* is: What interest, that is protected by the Double Jeopardy Clause, can not be furthered by granting relief in a collateral attack upon an otherwise valid conviction.

In considering this issue, we must recognize that our federal constitution contains several evolving concepts that have been and continually will be reinterpreted by the Supreme Court. Retrial of the instant petitioner did not violate the Double Jeopardy Clause in 1973. The subsequent conviction was obtained in good faith and with sufficient evidence. Petitioner has already suffered the consequences of the second trial process. Double jeopardy does not effect the validity of the fact finding process. Thus, the only possible interest which could be furthered by retroactivity would be to elevate the Double Jeopardy Clause to the highest magnitude of constitutional rights such that any violation of it is so fundamental that it requires full and automatic retroactive application. We have not even accorded our Fourth Amendment protections, against arbitrary government searches, such a lofty position. *Linkletter v. Walker*, supra. The Supreme Court in *Robinson* held that the Double Jeopardy Clause did not protect such a fundamental right, and there is no reason to elevate the protection beyond the current Supreme Court interpretations. No other interest, constitutional or otherwise, will be furthered by now allowing petitioner to escape the consequences stemming from a conviction which was constitutionally and legally obtained in 1973.

The reversal of the original conviction was an error of law on the part of the majority of the Court. See the original and dissenting opinions in *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1970). There was sufficient evidence in that case to support the conviction with or without the testimony of an accomplice witness.

The relief requested should be denied.

W. C. DAVIS, J., concurs in this opinion.

---

1. Since the decisions in *Burks* and *Greene*, when we reverse a conviction for insufficient evidence, we order a judgment of acquittal. E. g., *Owens v. State*, 576 S.W.2d 859 (Tex.Cr. App.1979). The federal courts allow an interlocutory appeal from the district court's denial of a motion asserting double jeopardy. *Abney v. United States*, supra. Thus, both our Court and the federal courts recognize the importance of preventing the second trial.