Charles Edwin BULLARD

v.

W. J. ESTELLE, Director, TDC.

No. CA–3–78–0442–G.

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 27, 1980.

On Motion for Reconsideration
Sept. 26, 1980.

888

Charles Edwin Bullard, pro se.

Joe B. Dibrell, Catherine E. Greene, Asst. Attys. Gen. by Catherine E. Greene, Douglas M. Becker, Asst. Attys. Gen., Austin, Tex., for defendant.

## MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

In this habeas corpus petition under 28 U.S.C. § 2254, petitioner seeks relief from a conviction for felony theft, enhanced by two prior felony convictions, and resultant life sentence. Petitioner was convicted by a jury, but elected to have the court pass sentence. His conviction was affirmed on appeal, but the life sentence assessed against him was vacated due to insufficiency of the evidence to show that petitioner was the defendant who was convicted in one of the two prior convictions introduced in the punishment phase of his trial. *Bullard v. State*, 533 S.W.2d 812 (Tex.Cr.App. 1976). The case was remanded to the trial court, which received additional evidence and again imposed a life sentence.[1] The Court of Criminal Appeals affirmed. *Bullard v. State*, 548 S.W.2d 13 (Tex.Cr.App. 1977).

Petitioner asserts six grounds for relief:

1. His constitutional rights were violated when the prosecutor sought and obtained a reindictment on the charge of enhanced felony theft upon petitioner's refusal to plead guilty to a prior indictment alleging felony theft alone.

2. His constitutional rights were violated by the prosecutor's comment in oral argument on petitioner's failure to testify.

---

1. Ironically, had the petitioner elected a jury for the sentencing phase, Texas law would have required retrial on issues of guilt *and* punishment. *E. g., Bullard v. State*, 548 S.W.2d 13, 18 (Tex.Cr.App.1977); *Ellison v. State*, 432 S.W.2d 955 (Tex.Cr.App.1968).

3. The evidence adduced during the guilt–innocence phase of his trial was insufficient to sustain the verdict of guilty.

4. The trial court erred in denying him a jury during the punishment phase of his trial after remand by the Texas Court of Criminal Appeals.

5. His fifth amendment right not to be placed twice in jeopardy for the same charge was violated in permitting the prosecution to present evidence at petitioner's sentencing proceeding after remand by the Texas Court of Criminal Appeals.

6. The imposition of a life sentence in his case constituted cruel and unusual punishment in violation of the eighth amendment.

The respondent, the magistrate, and the court agree that state remedies have been exhausted.

### I. Grounds One Through Four

The court agrees with the magistrate that petitioner's first ground for relief is squarely foreclosed by *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). *Accord, Montgomery v. Estelle*, 568 F.2d 457 (5th Cir.), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978), on all fours with the present case.

Nothing in the prosecutor's closing argument may reasonably be construed as a comment on petitioner's failure to testify. The gist of the prosecutor's challenged argument was that the defendant's intent could be inferred from his acts, an entirely proper form of argument. The prosecutor did refer to "acts done, words spoken" as measures of intent, and then state that "[n]o one has any words of Charles Bullard." Taken in context, however, this remark refers to the facts that none of the prosecution witnesses had testified to words spoken by petitioner, and not to petitioner's failure to testify. In any event, the error appears harmless.

The evidence is sufficient under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence, summarized in *Bullard v. State, supra*, 533 S.W.2d at 814–15, showed that petitioner brought a TV set and stereo to a food store and left without those items. Police undercover agents observed the items, later identified as stolen, in the store, and testified that they were the only such items in the store. The items were recovered from a suspect who had taken them from the store. The owner positively identified the items, and testified that he had paid about $700 for them. This evidence, together with reasonable inferences which may be drawn therefrom, is sufficient to permit a reasonable jury to find petitioner guilty beyond a reasonable doubt of felony theft over $200. *See Jackson v. Virginia, supra*.

There is no independent Federal constitutional right to have a jury fix punishment. *James v. Twomey*, 466 F.2d 718, 720–21 (7th Cir. 1972); *Payne v. Nash*, 327 F.2d 197, 200 (8th Cir. 1964); *cf. Parrish v. Beto*, 414 F.2d 770 (5th Cir. 1969), *cert. denied*, 396 U.S. 1026, 90 S.Ct. 606, 24 L.Ed.2d 522 (1970) (guilty plea). Denial of a state–created right to assessment of punishment by a jury may, however, constitute a denial of due process. *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). In the *Hicks* case, a mandatory sentence under an invalid statute was upheld by a state court, notwithstanding a state statute providing for jury assessment of punishment, on the ground that the invalid mandatory sentence was within the range the jury could properly have assessed. The Supreme Court vacated and remanded, holding that arbitrary disregard of the state–created right was a denial of due process.

In contrast to *Hicks*, where a state court acknowledged a state right to jury trial on punishment, applicable in the defendant's case, but declined to afford such a right because it was deemed unnecessary, the Texas Court of Criminal Appeals expressly held that Texas did not afford a right to jury trial on punishment in petitioner's case. *Bullard v. State, supra*, 548 S.W.2d at 16–21. *See Ex Parte Marshall*, 72 Tex.Cr.R. 83, 161 S.W. 112 (1913) (no

Texas constitutional right). That court's opinion in *Bullard* was based on a principled consideration of the legal arguments favoring and opposing a right to jury under the facts of petitioner's case, and cannot be characterized as an arbitrary disregard of otherwise applicable state law. This being the case, no claim is stated by the fourth ground for relief.

Petitioner's fifth ground presents the most substantial and difficult questions. He argues that the presentation of new evidence at his punishment hearing following reversal of his earlier sentence violated the double jeopardy clause as interpreted in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Two questions are presented: First, are the decisions in *Burks* and *Greene* to be applied retroactively?[2] Second, do those decisions prohibit a new punishment phase trial resulting in a life sentence where the punishment phase of an earlier trial has been reversed for insufficiency of the evidence to support a life sentence? A negative answer to either question will require dismissal of petitioner's fifth ground.

## II. Retroactivity of Burks and Greene

■ The general approach to retroactivity of decisions expanding the scope of constitutional protections in a criminal context has since 1965 been that set forth in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and elaborated upon in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Desist v. United States*, 394 U.S. 244, 248, 89 S.Ct. 1030, 1032, 22 L.Ed.2d 248 (1969). Under this test, retroactivity depends on the balancing of three factors: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new stan-

dards." *Desist v. United States, supra,* at 249, 89 S.Ct. at 1033.

■ While it is the general rule that "the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based," *Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Supreme Court made it clear in *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), that some double jeopardy cases are *sui generis* so far as retroactivity is concerned. Eschewing the *Linkletter* analysis, the Court unanimously held that

> [t]he guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the *Linkletter* cases were found not to affect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, *Mapp v. Ohio,* [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)].

409 U.S. at 509, 93 S.Ct. at 878. The Court went on to hold retroactive the rule in *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), that prosecution for the same offense may not be had both in municipal and in state court. The Court failed, however, to articulate a standard governing retroactivity of double jeopardy decisions generally. Of the three *Linkletter/Desist* tests, the Court discussed only that of prejudice to the state due to reliance on prior law: "We would not suggest that the distinction that we draw is an ironclad one that will invariably result in

---

**2.** Petitioner's conviction and resentencing became final before the *Burks* and *Greene* deci- sions were handed down.

the easy classification of cases in one category or the other. The element of reliance embodied in the *Linkletter* analysis will not be wholly absent in the case of constitutional decisions not related to trial procedure ...." 409 U.S. at 509, 93 S.Ct. at 878.

Recent cases in the circuits have construed *Robinson* as establishing a virtual *per se* rule of retroactivity in double jeopardy cases involving the prohibition of a second trial rather than procedural restrictions stopping short of a total bar to retrial. Hence in *Mizell v. Attorney General*, 586 F.2d 942 (2d Cir. 1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979), the Second Circuit held on the strength of *Robinson* that *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (rule that jeopardy attaches when jury is sworn of constitutional dimension), was to be applied retroactively. The court rejected the *Linkletter* approach, quoted extensively from *Robinson*, and held in summary fashion that *Crist* was retroactive. Likewise, in *Holt v. Black*, 550 F.2d 1061 (6th Cir. 1977), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977), the Sixth Circuit held *Robinson* to be dispositive of the question of the retroactivity of *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (juvenile delinquency hearing bars later adult trial), again quoting extensively from *Robinson* but engaging in little analysis. *But see Jackson v. Justices of Superior Court*, 549 F.2d 215 (1st Cir.), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977) (contra; rejecting *Robinson* approach in favor of standard analysis).

On the other hand, procedural requirements of the clause, *i. e.*, requirements not directly barring retrial, have been analyzed under the standard *Linkletter/Desist* tests. In *United States v. Rumpf*, 576 F.2d 818 (10th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), the Tenth Circuit held the rule of *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (pretrial appeal for denial of double jeopardy dismissal), to be nonretroactive. *Robinson* was not discussed. Similarly, in *Blackburn v. Cross*, 510 F.2d

1014 (5th Cir. 1975), the Fifth Circuit applied a *Linkletter* approach to the retroactivity of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel in criminal cases), finding that decision retroactive. The court noted that *Robinson* lent support to its decision, but expressly declined to rest its decision on that case. 510 F.2d at 1017–18 n.2.

Two courts have passed on the retroactivity of *Burks* and *Greene*. In *United States v. Bodey*, 607 F.2d 265 (9th Cir. 1979), the Ninth Circuit, quoting from *Robinson*, held the *Burks/Greene* rule retroactive in summary fashion. The Texas Court of Criminal Appeals has dealt with the issue at greater length. That court has repeatedly held *Burks* and *Greene* retroactive. *Ex Parte Harris*, 600 S.W.2d 791 (Tex.Cr.App. Nov. 7, 1979); *Ex Parte Colunga*, 587 S.W.2d 426 (Tex.Cr.App.1979); *Ex Parte Dixon*, 583 S.W.2d 793 (Tex.Cr.App.1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Ex Parte Reynolds*, 588 S.W.2d 900 (Tex.Crim.App.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Ex Parte Mixon*, 583 S.W.2d 378 (Tex.Cr. App.1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980). In *Ex Parte Reynolds, supra*, the progenitor of this line of cases, the court interpreted *Robinson* as diminishing the importance of the "reliance" prong of the tripartite test of *Stovall* and *Desist*, and virtually eliminating the third branch of the test (effect on administration of justice). It thus focused on the first branch, relating to the purpose of the rule. Finding a purpose to avoid the inequity of allowing the government a "second bite at the apple," *Burks, supra*, 437 U.S. at 17, 98 S.Ct. at 2150, and to equate the treatment afforded defendants whose convictions are reversed on appeal for insufficient evidence with that given to those who are acquitted by the jury and those whose acquittal is directed by the trial judge, the court held that the purpose of *Burks* and *Greene* favored retroactivity. 588 S.W.2d at 903. It canvassed possible grounds of reliance by the state on the prior rule, and found such grounds speculative at

best. 588 S.W.2d at 904. Judges Douglas and Davis dissented, rejecting the notion that *Robinson* established a *per se* rule. They found a purpose in *Burks* and *Greene* to prevent a second *trial*, and favored nonretroactivity since the second trial had already taken place.

Whether the traditional test of *Linkletter, Stovall*, and *Desist* or the more recent but more amorphous test of *Robinson* is applied, a conclusion that *Burks* and *Greene* are retroactive is strongly indicated. The purpose of the rule of those two cases is to prevent the arbitrariness which would otherwise result from differing treatment of defendants whose insufficiency of evidence claims are recognized in different procedural postures. *Burks, supra*, 437 U.S. at 10–11, 98 S.Ct. at 2146–2147, see Note, *Double Jeopardy Consequences of Mistrial, Dismissal and Reversal of Conviction on Appeal*, 16 Am.Crim.L.Rev. 235, 268–69, 271 (1979). *See generally Sapir v. United States*, 348 U.S. 373, 374, 75 S.Ct. 422, 423, 99 L.Ed. 426 (1955) (Douglas, J., concurring); D. Mayers & F. Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions*, 74 Harv.L.Rev. 1, 13–14 (1960); Comment, *Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence*, 31 U.Chi.L.Rev. 365 (1964). While the primary thrust of the double jeopardy clause is to prevent a second trial, *Abney v. United States, supra*, 431 U.S. at 661, 97 S.Ct. at 2041, it does not follow that once a second trial has taken place all double jeopardy concerns disappear. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial *and possible conviction* more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) (emphasis supplied). If the *risk* of conviction created by the second trial is unacceptable under the double jeopardy clause, *a fortiori* the fruition of that risk must be unacceptable. While a second trial involves many incidents detrimental to the accused, such as personal strain, public embarrassment, and expense, *Abney, supra*, 431 U.S. at 661, 97 S.Ct. at 2041, which once suffered cannot be retroactively remedied, not the least of those incidents is the punishment imposed at the second trial. To refuse to provide relief against the result of a second trial merely because the trial itself cannot be erased would be to turn the double jeopardy clause on its head.

Retroactivity of *Burks* and *Greene* can run afoul of little detrimental reliance on the part of the state. As stated in *Burks, supra*, 437 U.S. at 16, 98 S.Ct. at 2149, "the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." The Texas Court of Criminal Appeals correctly noted that the only possible source of prejudice, that the state might have foregone prosecution for other offenses in order to reprosecute on the original offense, is too speculative in nature to bar retroactivity. *Ex Parte Reynolds, supra*, at 904.

The third branch of the *Linkletter* test, while arguably not applicable under *Robinson*, is nonetheless satisfied. In evaluating "the effect [of retroactivity] on the administration of justice," *Desist, supra*, 394 U.S. at 249, 89 S.Ct. at 1033, we must be mindful of the Supreme Court's admonition that "where the Double Jeopardy Clause is applicable, its sweep is absolute." *Burks, supra*, 437 U.S. at 11 n.6, 98 S.Ct. at 2147 n.6. Unlike retroactivity of procedural guarantees such as the exclusionary rule, see *Linkletter, supra*, retroactivity of the *Burks/Greene* aspect of the guarantee against double jeopardy will not interfere with the results of trials fair in other respects, thereby resulting in a burden on our system of justice and a windfall to those lucky enough to escape reprosecution. *Burks* and *Greene* instead teach that second trials should not have been held at all, and that another reprosecution would be barred. Retroactivity of those decisions thus serves rather than disserves the ends of justice.

In sum, under either of the potentially applicable standards, retroactivity of *Burks* and *Greene* is warranted. This being so, the question then becomes one of whether those decisions are applicable to petitioner's case.

### III. Applicability of Burks and Greene to Recidivist Proceedings

The rule of *Burks* and *Greene, supra,* was decided in the context of an insufficiency of evidence to support one or more elements necessary under the substantive state or federal law to establish a defendant's guilt.[3] Ordinarily, punishment proceedings, while sometimes involving evidentiary proof for purposes of aggravation or mitigation, do not involve the proof of discrete elements as a prerequisite to a particular punishment or range of punishment. The degree of punishment is instead left to the discretion of the sentencing entity. Hence *Burks* and *Greene* are as a rule inapplicable to punishment proceedings, since such proceedings cannot ordinarily be reversed for "insufficiency of the evidence" to support a particular level of punishment.

An exception to the rule of virtually unreviewable discretion of sentencing authorities lies in the area of recidivist or "habitual criminal" statutes. Under the Texas statute, typical of that of many states, a convicted defendant who is shown to have previously been convicted of two felonies, occurring in a specified sequence, receives a mandatory life sentence. Tex.Penal Code § 12.42(d); *cf.* Tex.Penal Code § 12.43 (habitual misdemeanor offenders). Under this scheme, proof of an objective fact–conviction of two prior felonies under certain conditions–authorizes, and indeed requires, an enhanced punishment, often greatly in excess of that which could be imposed for the offense itself.[4] *See generally Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

The question then becomes whether *Burks* and *Greene* prevent a renewed life sentence under this statute where an original life sentence has been reversed on appeal for insufficiency of the evidence to support enhancement. The only two courts to have addressed this issue have held that the cases do not apply to such a situation. *Girnus v. State,* 595 S.W.2d 118 (Tex.Cr.App.1980); *Porier v. State,* 591 S.W.2d 482 (Tex.Cr.App.1979) (*en banc*); *State ex rel. McMannis v. Mohn,* 254 S.E.2d 805 (W.V.1979). Both courts employed similar reasoning, holding that the respective recidivist statutes do not create a separate offense, and hence that retrial of the question of recidivism does not offend the double jeopardy clause. The *en banc* decision of the Texas Court of Criminal Appeals was by a 5–4 vote; the dissenting opinion regarded *Burks* and *Greene* as fully applicable to retrial of enhancement issues. *Porier v. State, supra,* at 484–85 (Odom, J., concurring in part and dissenting in part).

Recent case law has deemphasized the concept of an "offense" for double jeopardy purposes. *See Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *United States v. Rodriguez,* 612 F.2d 906, 924 (5th Cir. 1980). These decisions recognize that the definition of an "offense" is essentially arbitrary–that a single act or course of conduct may with equal logic be designated one offense or several. For example, the Texas recidivist statute as it applies to a conviction for felony theft could be recast as establishing two offenses.

---

**3.** The Court in *Greene* pretermitted the question of whether the *Burks* doctrine bars reprosecution where erroneously admitted evidence, such as the fruits of an illegal search and seizure, is necessary to make up a minimally sufficient quantum of evidence for conviction. *Greene v. Massey, supra,* 437 U.S. at 26 n. 9, 98 S.Ct. at 2155 n. 9. The Texas Court of Criminal Appeals has ruled that *Burks* does not apply in such a situation. *Ex Parte Duran,* 581 S.W.2d 683 (Tex.Cr.App.1979). The second conviction in this case could arguably be construed as "erroneously admitted evidence," since without a proper connection between the conviction and petitioner, the evidence was irrelevant. The fundamental difference between this case and *Duran,* however, is that in this case, all the admitted evidence, proper and improper, remains insufficient to support conviction, while in *Duran* the evidence adduced at trial would, if admissible, have been sufficient. This case is thus a "pure" case of insufficient evidence, as in *Burks,* with no overlay of "trial error" as in *Duran.* The court expresses no opinion on the question reserved in *Greene* and decided in *Duran.*

**4.** Compare the revised Texas death penalty procedure, Tex.Code Crim.Proc. art. 37.071; *cf.* Model Penal Code § 921.141 (Supp.1976-77). *See generally, e. g., Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

Offense # 1 would consist of felony theft by an individual with two prior felony convictions, and would be punishable by a mandatory life sentence. Offense # 2, a lesser included offense of Offense # 1, would consist of felony theft by a person with fewer than two prior felony convictions,[5] and would be punishable as an ordinary felony under Tex.Penal Code §§ 12.32 through 12.34. Indeed, this approach is sometimes utilized in the Texas penal statutes. *See* Tex.Penal Code § 31.03(d)(4)(C) (theft, otherwise a misdemeanor, is a felony if defendant has twice been convicted of theft). To allow the double jeopardy consequences of retrial to turn on whether recidivism is a separate or different offense under state law is thus to exalt form over substance.[6]

The Court's holding in *Burks* established the principle that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States, supra,* 437 U.S. at 11, 98 S.Ct. at 2147. If this principle is to be given its full meaning, it must be applied in every situation in which the burden is on the prosecution to establish a fact as a prerequisite to a given degree of punishment. While retrial of enhancement issues would not give the prosecution a second opportunity to establish criminal *liability*, it would give the state a forbidden "second bite at the apple" on the *range* of punishment which could legally be imposed. *Cf. Burks v. United States, supra,* at 17, 98 S.Ct. at 2150.

A second important rationale of *Burks* deals with procedural equality. The Court reasoned that it would be illogical to afford a different degree of double jeopardy protection to reversal on appeal for insufficient evidence, which indicates that the factfinder erred in failing to acquit the defendant, and acquittal in the trial court, which has been invariably held to bar reprosecution. In similar fashion, reversal of a sentence for insufficient evidence to support the enhancement allegations is an indication that the jury or trial judge erred in failing to find those allegations "untrue." To draw a distinction between those two procedural postures would create the same inconsistency the *Burks* court sought to avoid. *See Porier v. State, supra,* 591 S.W.2d at 485 (Odom, J., concurring in part and dissenting in part).

■ The law is now well established that conviction of a lesser included offense constitutes an implied acquittal of the greater offense, and bars retrial on the greater charge. *Price v. Georgia,* 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970); *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957). For example, a conviction for second degree murder bars retrial for first degree murder. *Green v. United States, supra; cf. Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The *Price* and *Green* cases teach that an accused may be forced to run the gauntlet of exposure to a particular quantum of punishment only once. *But cf. North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (increased sentence on retrial not double jeopardy violation). Given the analogy between recidivist statutes and statutes defining greater and lesser included offenses, it follows that a finding of "untrue" to one or both enhancement allegations would preclude retrial of the enhancement issues, just as an implied finding of "untrue" to an allegation of premeditation forecloses retrial for first degree murder. This being the case, a similar ef-

---

5. Tex.Penal Code § 12.42 also provides for partial enhancement based on one prior felony conviction. This aspect is ignored in the example given for the sake of simplicity.

6. Similarly, some states define the offense of capital murder as first–degree murder accompanied by certain aggravating circumstances. Other states define only an offense of first-de-

gree murder, and authorize an enhanced punishment if aggravating circumstances are present. A jury's finding that aggravating circumstances are absent ought not to have differing double jeopardy consequences depending on the state's particular formulation of the offense.

fect must be given to an appellate decision that a finding of "untrue" was warranted by the evidence.[7]

### IV. Relief

For the foregoing reasons, petitioner's fifth ground of error is well taken. Since there is no error in the underlying conviction, however, a general writ of habeas corpus is not in order. Rather, petitioner will be ordered discharged from custody unless retried or resentenced, as the state law requires, within 90 days.[8] *See Brown v. Estelle*, 591 F.2d 1207 (5th Cir. 1979). Sentence on retrial or resentencing may not, of course, be based on Tex.Penal Code § 12.42(d). Whether petitioner may be sentenced under Tex.Penal Code § 12.42(a) (enhancement based on one prior felony conviction), in light of the fact that the trial court's finding as to one of the prior convictions was supported by sufficient evidence, is, at least in the first instance, for the state courts to decide.

### ON MOTION FOR RECONSIDERATION

In this habeas corpus action, the court on August 27, 1980, entered a memorandum order and judgment granting a writ of habeas corpus. On September 12, 1980, respondent filed a motion for new trial, arguing that the court erred in holding the rule of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), to be retroactive.

 At the outset, the timeliness of the motion is subject to question. Fed.R. Civ.P. 59(b) provides that "[a] motion for a new trial shall be served not later than 10 days after the entry of the judgment." The instant motion was filed sixteen days after entry of judgment. The critical time, however, is that of service and not that of filing. *Allen v. Ault*, 564 F.2d 1198, 1199 (5th Cir. 1977); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2812, at 83 (1973). The certificate of service accompanying the motion, *see* Local Rule 2.1(e)(4), states that service was accomplished on September 8, 1980, the 12th day after judgment. The tenth day having fallen on Saturday, September 6, the service on Monday, September 8, was timely. Fed.R.Civ.P. 6(a). Filing with the court, having occurred within a reasonable time (four days) after service, was also timely. Fed.R.Civ.P. 5(d).

Respondent argues that this court failed to accord sufficient weight to the possibility of detrimental reliance by the State on the pre–*Burks* rule.[1] He urges as "a matter of common sense and general knowledge" that prosecutors often forego prosecution on other offenses once an apparently valid conviction is obtained. In addition, he offers the affidavit of the Chief of the Appellate Section of the Dallas District Attorney's Office in support of this assertion. This affidavit, in addition to speaking generally concerning foregone prosecutions, points to two indictments against this petitioner which were dismissed after the instant indictment was prosecuted to an apparently successful conclusion.

Respondent's arguments overemphasize the importance of the reliance element of the test of *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and its progeny, as applied to double jeopardy decisions. Reliance is only one element of a three–part test, which also focuses on the purpose of a new rule and its effect on

---

7. The citation by the Supreme Court of a case [*Regina v. Drury*, 3 Cox Crim.Cas. 544, 175 Eng.Rep. 516 (Q.B.1849)] involving an "improper sentence" as one involving reversal for "trial error," *Burks v. United States, supra,* 437 U.S. at 14 n.8, 98 S.Ct. at 2148 n.8, in which case retrial is not barred, does not require a different result. There is no indication that the early English case cited involved a specialized sentence requiring particular proof, as is the case here.

8. Petitioner's sixth ground of error, that his life sentence constitutes cruel and unusual punishment, is moot under this disposition. In any event, it is foreclosed by *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

1. No challenge is made in the motion for new trial to any other aspect of this court's retroactivity analysis. Nor is any other error claimed in the court's application of *Burks* and *Greene* to recidivist proceedings.

the administration of justice. The Texas Court of Criminal Appeals held in *Ex Parte Reynolds*, 588 S.W.2d 900, 903 (Tex.Cr.App. 1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980), that the purpose of the *Burks/Greene* rule was of primary importance in determining its retroactivity, and this court agrees. *See Desist v. United States*, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969) ("Foremost among these [*Linkletter*] factors is the purpose to be served by the new constitutional rule.")

It must be made clear that dismissal of other charges following an apparently successful *original conviction* is not the type of reliance at issue here. An argument based on this type of reliance would have to be that other prosecutions were foregone in the belief that *if* the original conviction were reversed for insufficient evidence a retrial would be available. This argument is implausible for two reasons: First, the likelihood that any particular conviction will be reversed for insufficient evidence is remote, especially when viewed from the prosecutor's perspective immediately following a conviction.[2] This suggests that few prosecutors would take such a possibility into account in determining whether to prosecute on other charges. Second, if a prosecutor were indeed worried about this possibility, the pre–*Burks* rule would have provided cold comfort: a prosecutor would be unlikely to forego prosecution on other ripe offenses in reliance on an opportunity to reprosecute a stale case a year or two later after an appellate reversal. These factors suggest that few prosecutors relied on the pre–*Burks* rule by failing to prosecute other offenses as safeguards against a later insufficient evidence reversal.

The only arguable detrimental reliance on the pre–*Burks* rule would occur *after* the original conviction has been reversed for evidentiary insufficiency. At this point, it is possible that a prosecutor will choose to retry the old case rather than trying other cases for the first time. By this time, however, the choice is among several stale cases.[3] As to some of these, the statute of limitations may have run. As to the remainder, there was little reason under the pre–*Burks* rule for a prosecutor to choose as the sole charge for prosecution a charge which the appellate court has already held to have been unsupported by sufficient evidence at the original trial. This is not to say that prosecutors will not choose other charges to prosecute now that *Burks* and *Greene* are the law: it merely suggests that such procedure will not be a radical departure from their previous practice.

In holding *Burks* and *Greene* retroactive, the Texas Court of Criminal Appeals had this to say concerning the state's allegations of detrimental reliance:

> [W]hat prejudice would the State suffer from retrospective application of the new rule as a result of its reliance on the old rule? The prejudice in retroactive application of procedural rules arises primarily from the denial of use of evidence and the burden of retrial. No such prejudice would accompany a retroactive application of the *Burks–Greene* rule simply because it would bar rather than require a retrial, and it in no way affects what evidence the State may use. The State in its brief suggests prejudice "if petitioner might have been tried upon other charges following [her] first conviction," but the State abandoned any such other prosecutions to reprosecute the reversed case. We find such prejudice to be too speculative in nature. If this were sufficient to bar retroactive application, then all rules would be prospective only. Also, as stated in *Burks* itself:

>> "[T]he prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble."

---

**2.** It is much more likely that a case will be reversed for trial error, in which event there is no bar to retrial. *Greene v. Massey, supra*, 437 U.S. at 26, 98 S.Ct. at 2155.

**3.** It is unlikely that fresh charges will be available in light of the fact that defendants are typically incarcerated pending appeal.

In sum, we find no demonstrable prejudice to the State despite good faith reliance on the old rule.

*Ex Parte Reynolds, supra*, at 904. This court endorsed this reasoning in its August 27, 1980, memorandum order. While the court's memorandum order was in preparation, a sister district court also endorsed the *Reynolds* analysis. *Carter v. Estelle*, 499 F.Supp. 777 (S.D.Tex.1980). Thus all courts to consider the question have held the possibility of foregone reprosecution insufficient to bar retroactivity.

The fact that prosecution on other charges was in fact foregone in this case does not alter the result. While a rule under which retroactivity is evaluated on a case–by–case basis is conceivable, such a rule would be without precedential support. Under the *Linkletter* and *Robinson*[4] tests, retroactivity is determined without reference to the facts of any particular case.

The motion for new trial is DENIED.

4. *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973).